J. N. BROOKER ET AL. V. W. T. BROOKER ET AL.

No. 6879. Decided June 2, 1937.
Rehearing overruled July 14, 1937.
(106 S. W., 2d Series, 247.)

28

*Slay & Simon* and *Thorp Andrews,* of Fort Worth, *Ocie Speer* and *Black & Graves,* of Austin, for plaintiffs in error.

The testamentary intention must be gathered from the will, viewed as an entire single instrument. As thus viewed the will plainly provided that the testator's estate shall be held in trust for the period of the lives of six named beneficiaries and twenty-one years after the death of the last survivor of them and no longer. Since all the beneficiaries thus named were persons in being at or before the time of the testator's death, the will does not violate the rule against perpetuities. Hancock v. Butler, 21 Texas 808; Calvery v. Calvery, 122 Texas 210; Dulin v. Moore, 96 Texas 135, 70 S. W. 742; Frame v. Whitaker, 120 Texas 53, 36 S. W. (2d) 149.

*Greenwood, Moody & Robertson,* of Austin, *Baker, Botts, Andrews & Wharton,* of Houston, *Cantey, Hanger & McMahon, Chester B. Collins, Warren Scarborough,* and *Gillis A. Johnson,* all of Fort Worth, for defendants in error.

The Brooker will as a whole evidences the paramount desire and dominant intent to create an indestructible future estate, which, since it will not vest with certainty within the time prescribed by law, avoids the whole. Anderson v. Menefee, 174 S. W. 904; Neely v. Brogden, 239 S. W. 192; Philleo v. Holliday, 24 Texas 38; Gray on the Rule Against Perpetuities (2d ed.), Sec. 629.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a probate proceeding. J. N. Brooker, the testator, died on June 9, 1932, in Tarrant County, Texas, leaving a will, which was duly probated without contest in the probate court of Tarrant County on September 16, 1932. After the will had been admitted to probate, and in due time, the present suit was filed by W. T. Brooker et al., defendants in error here, against J. N. Brooker et al., plaintiffs in error here, in the probate court of Tarrant County pursuant to Article 3433, R. C. S. of Texas, 1925, as an action to annul and suspend the provisions of the above will. On final trial in the county court a judgment was entered for J. N. Brooker et al., refusing to annul any of the provisions of such will. W. T. Brooker et al. appealed to the district court of Tarrant County, Texas, where, on final trial, judgment was again entered sustaining the will in all of its provisions. W. T. Brooker et al. duly appealed to the Court of Civil Appeals at Fort Worth, where, on final hearing, judgment was entered reversing the judgment of the district court and remanding the cause to that court with instructions to enter judgment annulling and suspending the entire will. The case is pending in this Court on writ of error granted on application of J. N. Brooker et al.

Before proceeding further we deem it advisable to quote the will here attacked. It is as follows:

"STATE OF TEXAS 〕
COUNTY OF TARRANT 〕 KNOW ALL MEN BY THESE PRESENTS:

"THAT I, J. N. Brooker of the County of Tarrant and State of Texas, being of sound and disposing mind and memory and in the enjoyment of good health, and desiring at this time to make provision for the management and disposal of whatever estate I may die possessed of, at the time of my death, do make, declare and publish this as my last will and testament. Hereby revoking all other wills, if any heretofore made by me.

"ITEM FIRST: I will, devise and bequeathe to my sister Alice Brooker, the property in which I live and occupy as my home and any quantity of land that may be considered a part of said

home up to Two Hundred and Twenty-Five (225) acres must be included and conveyed in this will as my home and all improvements and livestock thereon and all household and kitchen furniture in or about said home.

"ITEM SECOND: I have conveyed, or shall hereafter convey or may at any time convey Real Estate by deed to take effect after my death to my sister, Alice Brooker. And also to my niece Tina Brooker. Said deeds are to become in full force and effect immediately after my death. And possession of such property by them to take effect at that time. And any and all such property so deeded is to belong to Alice Brooker, or Tina Brooker as specified in such deeds. And such property is not to be recognized as my property at my death, nor to be included in the management or division of my estate.

"ITEM THIRD: I will and direct that all the remainder of my estate, real, personaly or mixed of which I may die seized and possessed or entitled to; (Except as mentioned in items one and two of this will) Shall be held together and not partitioned during the life of my last surviving legatee, and twenty-one (21) years thereafter. But if my heirs should wish to hold my Estate together for longer period., if they continue the management herein provided; then it is my wish and desire that they should have the right to do so, by a majority vote of my legal heirs that are over Twenty-One (21) years of age, at the time of such vote. And if they legally can, and do take such vote; the such vote must be taken on or about the end of the Twenty-One (21) years mentioned for division, or near the end of any legal extended time for closing the management and division of this will. I further direct that said remainder of my Estate shall be held, managed and controlled by five Trustees hereinafter named by me.

"ITEM FOURTH: I will and direct that said five trustees shall at all times have as many as three of the legatees of this will in its membership, and if at any time there shall not be living as many as three of said legatees qualified for such membership, then the number shall be made up out of such suitable heirs of said legatees as may be of age and qualification necessary to perform the duties of said Trusteeship. My intention and purpose is that there shall always be among said Trustees at least three of my legatees or heirs designated in this will, or the descendants of those heirs who are of sufficient age and qualification to take the place of those who may cease to be Trustees. A General Manager shall be selected from among said Trustees; and the fees of each of said Trustees and also the compensation of the Manager shall be fixed and controlled by a full vote of all

said Trustees, and it is hereby provided that said fee shall not exceed the general average prices paid for such work in the State of Texas; and every such account of any Trustee shall before payment be approved by at least four of the Trustees and paid on the check of the General Manager. The General Manager shall be paid a salary by the month. The other Trustees shall be paid only for the time necessarily in the performance of the service and duties required of them by reason of their said Trusteeship. Any Trustee or the Manager may be changed by a vote of four of the Trustees, or by a full vote of all of said Trustees, and said vacancy so created by said change may be filled by the election of another Trustee or Manager, or both, by a vote of four of said members, or by a full vote of all said Trustees; and any vacancy by reason of the death; removal or resignation, inability or refusal of any of said Trustees to act may be filled in the same manner.

"ITEM FIFTH: No Trustee shall be allowed to vote by proxy. But his vote may be given by the other Trustees, or any one of them, by written authority executed by him and attested by an Officer having an Official seal of office, and duly Certified by such Officer. And any such written authority, so executed and Certified to by an Trustee, may be cancelled at any time by the Trustee executing it, or by a vote of any four of the Trustees, such authority can only be used for a period of one year from its date.

"ITEM SIXTH: Said Trustees shall have full power to Manage and control said Estate to the best of their ability and for the best interests of the beneficiaries of this will, as herein outlined; but if they sell any Real Estate; (Except such real estate as is taken for debt or through foreclosurer) they shall reinvest the values obtained therefrom in other Real Estate. They shall not make loan, create or accept notes unless said paper is secured and protected by a valid lien on real estate, Bank stock or Bonds to the full value of the amount secured. But other valuable kinds of security may be taken as additional security to said real estate securities. Said Trustees may buy not to exceed Ten Thousand ($10,000.00) Dollars worth of Bank Stock in any solvent prosperous Bank of good standing, and they may also buy and sell livestock to be used only on real estate that is owned and operated by and for my Estate. They may also buy any kind of real estate, excepting coal or oil lands or any other kind of mining property., unless said mineral property is purchased at its cash value on a conservative valuation for farming or ranch purposes alone. A vote of three of said Trustees, may loan an amount not to exceed $15,000.00 of funds on hand. But

a vote of at least Four shall be necessary to make any larger loans or for the purchase of any kind of property, or securities real or personal over Fifteen Thousand ($15,000.00) & No/100 DOLLARS. But three Trustees may sign lease contracts, improvement Contracts, transfers and releases. Three Trustees shall also have a right to cancel, forfeit and mature any leases, contracts or notes where necessary to do so. No loans shall be made on any kind of security except real estate, Bank Stocks or Bonds, except as above mentioned and the property upon which any such loan or loans may be made shall be valued not to exceed 65% of its cash value according to conservative valuation, unless other valuable kinds of collateral are taken as additional security on said notes. No loans shall be made on oil lands, or gas lands, or coal lands, or any class of mining property or mining lands, except at a cash valuation on said lands estimated for farming or ranch purposes only. Nor shall any loan, or loans be made on lands near by or adjoining a City or town unless taken at low farm or ranch valuations, and no loan, or loans shall be made on any real estate in any town or city of less than 5,000 inhabitants.

"ITEM SEVENTH: I will and direct that the net income of my said Estate after paying all expenses of the care and management thereof, shall be divided by my said Trustees every six months among my legatees in the proportions as follows to-wit: One-Sixth (1/6) of said net income shall be paid to my Brother, John Brooker; One-Sixth (1/6) shall be paid to my Niece, Tina Brooker, she being the Daughter of my Brother, W. T. Brooker by his First wife; One-Sixth (1/6) each to my four Sisters, Mrs. Lizzie Reid, Mrs. Laura Morris, Mrs. Annie C. Weatherby and Miss Alice Brooker., and said net income of my said estate shall be partitioned and paid over to said above named legatees in the proportions above stated at the end of every six months during the entire time before the final division of this said Estate as above provided. The principal of my said property is to be kept invested as nearly as possible and managed by said Trustees as above outlined for the full term of this will. Until the property, and securities is all divided and allotted to the heirs as herein mentioned and provided for. All of the children of my Brother, W. H. Brooker and his wife Julia Brooker, both deceased and all of their heirs; also my Brother W. T. Brooker and his wife, Emma Brooker and all of the children of my Brother, W. T. Brooker by his Second wife, Emma Brooker are herein and hereby disinherited by me, that it is not my intention to will or bequeathe to or convey in this will to either of my said Brothers W. H. Brooker and

W. T. Brooker, their wives or their heirs, (Except to Tina Brooker, daughter of W. T. Brooker by his First wife.)

"ITEM EIGHTH: I will and direct that immediately after the expiration of the Twenty-one (21) years above mentioned, or any legally extended time thereafter, I direct that my Trustees shall partition among my legatees hereinabove mentioned all the property belonging to my said Estate in the hands of said Trustees., real and personal among my said Six legatees hereinafter mentioned in the proportions as stated in ITEM SEVEN of this will; That is,. they shall divide said Estate among said Six legatees in the proportions as directed for the division of the net income of my said Estate as set forth in said item seven of this will.

"ITEM NINETH: I will and direct that in case of the death of any of my said legatees hereinabove named before or after my death, and before said property shall have been partitioned in accordance with the terms of this will; Then I direct that the bequeat herein made to such deceased legatee or legatees shall go to his or her children to be divided equally among such children, or their descendants, and in case of the death of any of my said legatees herein named before the expiration of this will as hereinabove provided; I direct that my Trustees shall take charge of, manage and dispose of such interest of the child or children of my deceased legatee as is provided for herein for my legatees. Provided that said Trustees shall only pay over to a minor such sum out of the income belonging to such minor as they shall deem necessary for the actual support and education of such minor, and may invest the remainder of such income for the benefit of such minor. But this Estate nor said Trustees shall not be liable for any loss through such investment. Provided that if any of my legatees shall die before the final distribution of my Estate, by my Trustees, without, by their own personal increase, leaving a child or children, then I direct that the entire share devised to such deceased legatee or legatees shall revert to my Estate and become a part thereof.

"ITEM TENTH: I will and direct that none of my legatees herein named, or any of their heirs, shall have any right to sell, convey or dispose of in any manner, pledge or encumber any of the Real Estate or Bank Stock or other Stocks and Bonds, or securities or any other class of kind whatsoever (or the income from the same) that is hereby bequeathed to them, or any of them, before the same shall be actually delivered to them. Nor shall any of my legatees or their Child or Children be authorized or have the right to dispose of or encumber any Real Estate, Bank Stock or any other securities whatsoever men-

tioned herein and devised to them by this will, (excepting the income from same during their natural lives, except they may exchange, trade or donate property or securities to or with each other. This provision in item Ten (10) is not to prevent my legatees or heirs while acting as Trustees, or manager from handling or disposing of securities or property as is set out and provided for in Item Six (6) of this will.

"ITEM ELEVENTH: I hereby direct that the General Manager hereinafter to be named shall keep a accurate and true account of all transactions made in and about the Management and control of said Estate, and shall make a trial balance at the end of each and every six months showing the condition of said accounts and transactions therein kept. Said General Manager shall furnish a copy of said trial balance to each of the said Trustees and the Six mentioned legatees of this will, and in case of their death to furnish the same to such heir of said deceased legatee as the Trustees select, this instruction must be observed and complied with during the entire management of my said Estate by said Trustees.

"ITEM TWELFTH: I will and direct that the General Manager of my Estate shall keep or have kept at his or her own expense a full set of books and accounts showing all transactions connected with said Estate, and transactions arising therefrom and incident thereto; which said books shall be kept open and subject to inspection by any of my said Trustees or legatees of this my will. And my said Trustees shall have all of said Books audited or examined by an expert bookkeeper at least once each year, and the report of such bookkeeper shall be furnished to said Trustees and a copy of the same furnished to each of the legatees or heirs hereinabove mentioned.

"ITEM THIRTEENTH: I will and direct that said Trustees shall deposit all funds coming into their hands from my said estate, or belonging to my said estate, in a solvent National Bank of good standing, subject to check as herein provided.

"ITEM FOURTEENTH: I will and direct that all moneys over One Thousand ($1,000.00) Dollars which it may be necessary for the General Manager to pay out shall be by checks signed by the Manager and approved by at least two other Trustees. Debts under $1000.00 may be paid by the Manager and an accurate account kept until books are audited.

"ITEM FIFTEENTH: I will and direct that my said Trustees shall not be required to give any Bond or Security as such. And I further specially direct that no other action shall be had in the County Court in relation to the settlement, Management and disposition of my Estate than the Probating and Recording of

my will and the return of an Inventory, Appraisement and list of claims of my Estate.

"ITEM SIXTEENTH: I will and direct that my said Trustees shall pay off at the time of maturity any and all valid and just claims existing against me at the time of my death. I further direct that my said Trustees shall neither borrow any money as such Trustees as a charge against my Estate, and shall neither contract any debt, or debts against the same either in purchase of property or otherwise. (Excepting for repairs or improvements or expenses approved by Trustees, or as mentioned in ITEM SIX (6) of this will. They shall invest all moneys coming into their hands belonging to my Estate, except the income from the same, in real estate or bank stock or loans and Bonds, as hereinbefore directed, but shall not be authorized to contract any debt in such purchase or purchases.

"ITEM SEVENTEENTH: I hereby appoint my Niece Tina Brooker and my Brother John Brooker, and my Sister Alice Brooker, and my friend Ben H. Martin of Fort Worth, Tarrant County, Texas, and my Nephew Omar C Weatherby, Trustees of this my will, conferring upon them the duties and powers contained and defined in this will; and I appoint my said Niece, Tina Brooker as General Manager of my said Estate with the powers and duties hereinbefore in this will granted to such General Manager. Bond for Manager or Trustees may be demand by a Vote of Four Trustees.

"In Testimony whereof, I hereto sign my name in the presence of the WITNESSES whose names are hereto signed as WITNESSES at my request, and both of whom are above the age of FOURTEEN (14) years and who sign their names hereto as such WITNESSES in my presence and in the presence of each other, this the 15TH day of January A. D. 1930.

"J. N. Brooker

"We hereto sign our names as witnesses to the foregoing instruments at the request of the testator J. N. Brooker, and in his presence and in the presence of each other, on the date above mentioned. "B. W. James

"John Tarlton."

We deem it at this point advisable to refer to two deeds, as follows:

(a) Deed from J. N. Brooker to Alice Brooker, dated August 18, 1926, filed for record June 15, 1932, and recorded in the deed records of Tarrant County, Texas. This deed recites that for a cash consideration of Ten Dollars, and the further consideration of love and affection, J. N. Brooker grants, gives, and conveys to Alice Brooker for the term of her natural life and

to her child or children, if she has a child of her own living at the time of her death, certain lots or parcels of land situated in the City of Fort Worth, Tarrant County, Texas. It is unnecessary to describe the land, and, under the view we take of this case in its present form, it is unnecessary to detail the other provisions of the deed.

(b) Deed from J. N. Brooker to Tina Brooker, dated August 6, 1927, filed for record June 15, 1932, and recorded in the deed records of Tarrant County, Texas. This deed recites a cash consideration of Ten Dollars, love, and affection, and grants, gives, and conveys unto Tina Brooker for her natural life, and to her child or children, if she has a child of her own living at the time of her death, certain lots or parcels of land in the City of Fort Worth, Tarrant County, Texas. Under the view we take of this case in its present form it is unnecessary to detail the further provisions of this deed, or to describe the land included therein.

It appears that J. N. Brooker, the testator in the above quoted will and the grantor in the two above described deeds, died on June 9, 1932, in Tarrant County, Texas. It thus appears that the above two deeds, according to their dates, were executed prior to the execution of the above will. It also appears that such deeds were filed for record after J. N. Brooker's death. Also, we gather from the record that the above deeds have never been probated, or attempted to be probated, as parts of the J. N. Brooker will.

W. T. Brooker et al., who are legal heirs of the testator in the above will, and who, in law, will share in the estate if the will is illegal, have contested the same on two main grounds, (a) on the ground that the will attempts to create a perpetuity and is therefore void, and (b) on the ground that the will is unintelligible and is therefore void. We have reached the conclusion that the trust features of the will are in violation of the rule against perpetuities. It will therefore not be necessary for us to discuss the other question.

We are of the opinion that "Item First" of this will constitutes a valid bequest of the properties therein mentioned to Alice Brooker. We shall later in this opinion further discuss this matter.

■ It will be noted that "Item Second" of the above will states that the testator has "conveyed, or shall hereafter convey or may at any time convey" by deed real estate to Alice and Tina Brooker. This item expressly takes any property so conveyed out of the will. In this regard "Item Second" by very clear lan-

guage demonstrates an intent that all properties already deeded, or to be deeded, to Alice and Tina Brooker shall pass by deed and not under the will. In this connection, we call attention to the fact that the will expressly says: "And any and all such property so deeded is to belong to Alice Brooker, or Tina Brooker as specified in such deeds. And such property is not to be recognized as my property at my death, nor be included in the management or division of my estate." From the above, it appears that we hold that "Item Second" of this will, if it could be given any effect at all, which we hold it can not, would only operate to take the properties therein referred to out from under the will, and let them pass by deeds.

Still discussing "Item Second," we are of the opinion that it is utterly void. It seems to be the rule in some jurisdictions, and not in others, that a will may incorporate within itself another written document, if such document is in existence at the time the will is executed and is identified by clear and satisfactory proof as the document referred to in the will. 68 C. J., p. 640, par. 268. We know of no authority that holds that an instrument not in existence at the time the will is executed can be incorporated therein by reference. In this connection, we have no evidence that the testator left any deed or deeds to Alice or Tina Brooker executed after the execution of the will. It appears that the two deeds above mentioned were found among testator's effects after his death. They bear date prior to the date of the will. In our opinion such a record is utterly insufficient to incorporate these deeds into the will by reference. The deeds are not described in any manner in the will, and neither are the properties included therein. So far as we know, testator could have executed other deeds to Alice and Tina Brooker and destroyed them before death. At least this could have happened. If deeds can be incorporated into a will in this way a person could execute any number of deeds, store them among his papers, and then simply make a will saying his property shall pass as per deeds already executed. He could then destroy one or more of the deeds, and thereby alter the entire meaning of the will, and no one would be the wiser. Clearly, to uphold such a procedure would be to set a very unwise and dangerous precedent. In the same manner a testator could refer in general language to any other class of documents as already executed by him, make such documents parts of his will by reference, and then destroy them, and no one would be the wiser. We think that even if it should be held that documents in existence at the time a will is executed can be incorporated therein by reference, a question we do not decide, still we think

that each particular document should be identified by the will so as to leave the intention of the testator in regard thereto reasonably free from doubt.

■ We do not attempt to pass on the effect or validity of the above deeds as such. This being a probate proceeding, we here have no jurisdiction to do that. We simply hold that such deeds are not parts of the will.

■ Beginning with "Item Third" of the will it is evident that if it can be given any interpretation at all it must be interpreted as attempting to create a trust estate. It is true that such will, regarding the properties attempted to be left in trust, contains no express language vesting any character of title, legal or real, in any person or class of persons. In spite of this, by the use of the term "trustees" and the necessary implication arising from the authority attempted to be conferred, and the duties attempted to be imposed, we are compelled to the conclusion that the testator intended that the legal title to the trust estate should vest immediately upon his death in the trustees appointed to control and manage it. Munger v. Munger, (Civ. App., writ refused) 298 S. W. 470. Also, from the will as a whole, and the aims sought to be accomplished, we are compelled to the conclusion that the will leaves the real title to the corpus of the trust estate in suspension until the time provided for its final partition and distribution; when it will pass and vest in the class of persons provided thereby. Unless this will regarding the trust estate can be given the above construction it would have to fail utterly for want of provisions vesting any character of title, legal or real, in any person or class of persons.

■ Construed as above, we are further compelled to the conclusion that this will, as regards the trust estate, attempts to create a perpetuity in violation and contravention of Section 26 of Article 1 of our State Constitution. Such constitutional provision is a part of the "Bill of Rights" as contained in our State Constitution, and, so far as applicable here, reads as follows:

"Perpetuities * * * are contrary to the genius of a free government and shall never be allowed, * * *."

According to our authorities, and also according to the authorities generally, the rule against perpetuities, as contained in the above constitutional provision, is that no interest within its scope is good unless it must vest, if at all, not later than twenty-one years after some life in being at the time of the creation of the interest, and in some instances the period of

gestation will be added. Clarke v. Clarke, 121 Texas 165, 46 S. W. (2d) 658; Neely v. Brogden, (Com. App.) 239 S. W. 192. In this connection, it is the settled law that "if by any possible contingency a devise violates the rule, it can not stand, and must be held void." Neely v. Brogden, supra.

Ruling Case Law, Vol. 21, p. 287, par. 9, gives the following definition of perpetuities, which is very cogent here:

" * * * Another definition is that a perpetuity is a limitation which takes property subject to it out of trade and commerce for a longer period of time than a life or lives in being and twenty-one years thereafter, and when necessary the period of gestation. * * *."

■ Our Constitution declares that perpetuities are contrary to the genius of a free government and shall never be allowed. This constitutional provision expresses one of the cardinal and basic principles of our system of government. It is not a mere rule of construction. It goes further than that and constitutes a peremptory command of constitutional law that must be relentlessly enforced. In spite of this, we think that "where there is any ambiguity in the provisions of an instrument creating or transferring an interest or estate in property, the courts will incline to such construction as makes it consistent with the rule, under the doctrine that a construction should be favored which gives effect to intention rather than one which defeats it. But if the meaning is clear, it must be adopted even if the rule renders the gift so construed illegal, and a forced or unnatural construction may not be made in order to avoid the application of the rule." 48 C. J., pp. 997 et seq., and notes.

■ When the trust provisions of this will are construed as vesting the legal title to the properties included in the trust estate in trustees immediately on testator's death, and leaving the real title in suspension to pass only to the class of persons entitled to receive it under the will at the time of partition, as above interpreted by us, there is no escape from the conclusion that such trust provisions attempt to create a perpetuity. In other words, there is no escape from the conclusion that the trust provisions of this will create an equitable or real title that is left in suspension in such a way that it may not vest until the time provided by the rule against perpetuities has expired. Furthermore, there is no escape from the conclusion that the real title to the trust estate may be taken out of trade and commerce for a longer period of time than the life or lives in being at the time of testator's death, and twenty-one years thereafter, plus the period of gestation.

■ When we come to consider "Item Third" of this will, we find that it, standing alone, undoubtedly attempts to create a perpetuity. By its express terms it subjects the trust properties to limitations which may withdraw them from trade and commerce for a longer period of time than that allowed by the rule against perpetuities. In this connection, it will be noted that this item provides, in effect, for the continuation of the trust and against partition during the life of the last surviving legatee, and twenty-one years thereafter. If the withdrawal from trade and commerce stopped there, all would be well, but such is not the effect of this item. It then expressly provides that the trust estate may be held together, and partition thus postponed, by a majority vote of the heirs who are over twenty-one years of age at the time of such vote. This item then provides for an extension of an extension. There is no limitation on these extensions, and under the will they may go on forever. It must follow that "Item Third" of this will constitutes its trust properties a perpetuity.

When the various provisions of this will touching the trust estate are read as a whole, and read in conjunction with "Item Third," supra, they lead to the inevitable conclusion that the dominant purpose of the testator was to create a trust estate for an indefinite length of time. He uses the words, "management," "care," "care and management," and "trustee." He prescribes the duties of those who are to hold and manage that are trust duties. He provides for no vesting of the real title, except by the implication which must arise from the fact that he provides a class of persons who are to take when the right of partition accrues. He then fixes a time for partition which may be deferred under the very terms of the will beyond the time prescribed by the rule against perpetuities. In this connection, under the very terms of the will, division or partition is deferred until after the management of the trust estate is terminated.

We shall not lengthen this opinion by discussing in detail its various trust provisions. Such would serve no purpose. We have set the instrument out in full in this opinion. It speaks for itself. It is sufficient to say that every pertinent provision relating to the trust estate following "Item Third" clearly demonstrates that we have correctly interpreted that item. In this connection, we particularly call attention to Items "Fourth," "Sixth," "Seventh," "Eighth," "Ninth," and "Tenth."

We now revert to "Item First" of this will. This item is an unconditional and absolute devise of the property therein mentioned to testator's sister, Alice Brooker. As applied to this

case, it is a general rule that where some of the provisions of a will are valid and some invalid, the valid provisions will be allowed to stand if they can be separate from the invalid without doing violence to the intention of the testator, or interfering with the general purpose of the will. 69 C. J., p. 115, par. 1159. We think when this item is considered alone, and with the balance of the will, a purpose and intent on the part of the testator is demonstrated to give the properties described in the item to Alice Brooker, and that regardless of who shall finally take the balance of the estate. In this connection, it will be noted that the will in the very first item singles out this sister and gives her in fee simple the properties not included in any other bequest. No reason can be assigned that would lead to the conclusion that the testator wanted such bequest to fail if the others failed. On the other hand, we think this will affirmatively demonstrates a contrary intention. If it can not be held that this bequest stands in spite of the fact that the other portions of this will fall, it would be almost impossible to find a case where one bequest can stand where another falls. Defendants in error cite, among others, the case of Anderson v. Menefee, (Civ. App., writ refused) 174 S. W. 904. We have no fault to find with the opinion in that case, but to our minds its facts very materially differ from the facts in this case. In the Anderson case the will put the management of all of testator's property in the hands of trustees for the benefit of the wife. At her death the son of testator took one-fourth of such estate in fee simple. The will then made disposition of the other three-fourths of such estate to provide for testator's daughters and their heirs in such a way as to create a perpetuity. Of course it was held that the valid and invalid portions of such a will could not be separated, because to do so would work an injustice and violate the testator's general scheme. In the case at bar the property given Alice Brooker was not included in the trust estate, and the will manifests a desire on the part of the testator to give it to her regardless of any other event.

The judgments of the Court of Civil Appeals and of the district court are both set aside, and judgment is here entered remanding this cause to the district court with instructions to enter judgment effectuating the holdings of this opinion.

Opinion delivered June 2, 1937.

Rehearing overruled July 14, 1937.