MARGENE WELCH RUST, INDIVIDUALLY AND AS GUARDIAN OF MARGENE A. RUST v. GEORGE FOSTER RUST AND ARMSTEAD DUDLEY RUST, INDEPENDENT EXECUTORS AND TRUSTEES OF THE ESTATE OF JOHN Y. RUST, DECEASED, AND OTHERS.

No. A-1728. Decided November 3, 1948.
(214 S. W., 2d Series, 462.)

*Neill & Lewis* and *Robt. T. Neill,* of San Angelo, for petitioners.

The Court of Civil Appeals erred in declaring the will valid when it ought to have declared it invalid because violative of Section 26, Article I, of our Constitution condemning perpetuities. Henderson v. Moore, 144 Texas 398, 190 S. W. (2d) 800; Brooker v. Brooker, 130 Texas 27, 106 S. W. (2d) 247; Hughes v. Jackson, 125 Texas 130, 81 S. W. (2d) 656.

*Upton, Upton & Baker* and *Travis E. Baker,* of San Angelo, for Executors and other interested parties, *P. R. Rowe,* of Houston, for G. W. Strake, the owner of a mineral lease on the property involved, *T. J. Atwood* and *W. C. Williamson, Gannon & Port* and *Gauis G. Gannon,* of Houston, for the American Republics Corporation, assignee of Strake as to part of his mineral lease, and *C. T. Dalton,* of San Angelo, for guardian ad litem of Margene A. Rust, all respondents.

The will as construed by the trial court and the Court of Civil Appeals does not violate the rule against perpetuities. Clarke v. Clarke, 121 Texas 165, 46 S. W. (2d) 658; Ward v. First Natl. Bank, 141 Texas 558, 174 S. W. (2d) 953; Henderson v. Moore, 144 Texas 398, 190 S. W. (2d) 800.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This is a suit to construe the will of John Y. Rust, Jr., to determine whether the provisions thereof disposing of the residuary estate violate Art. I, Sec. 26 of the Constitution of Texas, condemning perpetuities. The trial court upheld all provisions of the will and rendered judgment accordingly. The Court of Civil Appeals for the Third Supreme Judicial District of Texas, in a very able opinion by Honorable James W. McClendon, Chief Justice, affirmed the judgment of the trial court. 211 S. W. (2d) 262. Having reviewed the record and the briefs of the parties, we have concluded that we erred in granting the application for a writ of error. We approve the opinion of the Court of Civil Appeals and find it unnecessary to write further on the question.

Judgment of the Court of Civil Appeals affirming that of the trial court, is affirmed.

Opinion delivered November 3, 1948.

MR. CHIEF JUSTICE MCCLENDON delivered the opinion of the Court of Civil Appeals, approved by the Supreme Court.

Suit to construe the will of John Y. Rust, Jr. The controlling question is whether the provisions of the will disposing of the residuary estate violates Art. I, Sec. 26, Texas Constitution, condemning perpetuities. The trial court upheld all provisions of the will, rendered judgment accordingly, and defendant Mrs. Margene Welch Rust, surviving wife of testator, has appealed in her individual capacity, and as guardian of the estate of Margene A. Rust (a minor), the only child of herself and testator.

The pertinent portions of the will (after a $1,000 legacy to Mrs. Rust) read:

"FOUR. All the remainder of my property of every kind and character, real, personal, mixed or choses in action of which I may die seized or possessed and wheresoever situated, I will, give, devise and bequeath in trust to my executors and trustees hereinafter named and to the survivor thereof and the substitute trustee hereinafter named to hold, manage, use and control for the use and benefit of my daughter, Margene A. Rust.

"The property here left for the use and benefit of my daughter Margene, shall be held in trust by my trustees, the survivor thereof and the substitute trustee until the 17th day of October, 1967, upon which date the trust shall terminate and the property here left in trust shall vest in fee simple in my daughter, Margene A. Rust, free of any restrictions whatsoever.

"If my daughter, Margene A. Rust, dies before October 17, 1967, the date upon which the trust herein created terminates, and leaves surviving her issue of her body, then such issue of her body shall become the beneficiary or beneficiaries of this trust and upon the date of its termination the fee simple title to all the property here left in trust shall vest share and share alike in such issue of her body then surviving.

"If my daughter, Margene A. Rust, dies before October 17, 1967, the date upon which the trust herein created terminates and does not leave surviving her any issue of her body, then upon her death, all of the property here left in trust shall pass in fee simple share and share alike unto my then living brothers and sister with the child or children of any brother or sister who then may be deceased, taking the share of the parents per stirpes.

"During the term of this trust my trustees and the survivor thereof and the substitute trustee shall possess, handle, manage and control all of the property here left in trust with full power and authority to mortgage, sell and convey the same or any part thereof, to invest and reinvest the proceeds of any such sale, as well as the income therefrom and in general to do each and everything which may be incidental to the complete management and control thereof.

"During the full term of this trust the trustees or substitute trustee acting may from time to time as they or it may see fit use any portion of the trust property, either income or corpus for the maintenance, support and education of my daughter, Margene A. Rust, or of any child or children of hers who may become a beneficiary of the trust under the term hereof and such sums may be expended directly by the trustees or substitute trustee for her use and benefit or from time to time paid over to the beneficiary to be expended by her regardless of minority and without the intervention of any guardianship whatsoever.

"I have full faith and confidence in the judgment of the trustees I name and I here specifically provide that the trustees or trustee acting hereunder shall have complete discretion in de-

termining the manner in which the trust property may be used for the best interest of the beneficiary of the trust.

"I provide that no trustee acting hereunder ever shall be accountable for any mistake in judgment in connection with the handling of the trust property."

Testator's two brothers George Foster and Armistead Dudley Rust were named independent executors without bond. They, and the survivor of them, were also named as trustees; a bank in San Angelo was named substitute trustee.

The facts are without dispute. They show:

John Y. Rust, Jr., died May 6, 1942. His will was probated May 26, 1942, and his executors promptly qualified and took charge of his estate. His only heirs at law were his surviving wife and daughter. His father, John Y. Rust, Sr., was living. His mother, Agnes B. Rust, died in 1941. The only other children of his father and mother were the two brothers and a sister, Sarah Agnes Rust Gordon. John Foster Rust was married to Minnie Rust. They had no children. Armistead Dudley Rust was married to Sarah J. Rust. They had one child, Nancy Rust, a minor. Mrs. Gordon's husband was Charles R. Gordon. Their only child was a daughter, Jean, married to Charles R. Rainey. Her only child was a three-month old son.

Testator's estate consisted principally of a 1/4 undivided interest in ranch lands—20,394.9 acres in Kimble County, known as Bear Creek, and 20,895.1 acres in Tom Green County, known as Campbell Ranch. His interest therein was appraised at $116,284.44. The rest of his estate was personalty, appraised at $10,533.05. His total indebtedness was listed at $81,547.75, $73,520.75 of which was in a note to his father for advances to cover excessive living expenses, secured by trust deed upon his interest in the two ranch properties. Net value of his estate was appraised at $45,289.94. The other 3/4 interest in these ranches was owned by his brothers and sisters. We give these details regarding his family and estate for whatever light they may shed upon a proper interpretation of the will.

The executors have paid Mrs. Rust's legacy; have renewed the trust deed (now held by a bank); and together with the other joint owners have executed two oil and gas leases upon the ranch properties.

The suit was brought by the two brothers, as executors and trustees, as well as individually joined in by all the other contingent beneficiaries under the will and the owner of the mineral leases, against Margene W. Rust, individually and as guardian of Margene A. Rust, and against the latter individually. In view of a possible conflict of interest between Margene W. Rust and her ward, the court appointed a guardian ad litem for the latter, who sought to uphold the will, and appears here as an appellee in support of the judgment.

■ The following definition of a perpetuity is now generally accepted in this State:

"A perpetuity has been defined as a limitation which takes the subject-matter of the perpetuity out of commerce for a period of time greater than a life or lives in being, and 21 years thereafter, plus the ordinary period of gestation." Neely v. Brogden, Tex. Com. App., 239 S. W. 192, 193.

The same is true of the following quotation from Bryson v. Connecticut Gen. Life. Ins. Co., 196 S. W. (2d) 542:

"The rule requires that the situation be viewed as of the date the instrument becomes effective and 'when so viewed, if by any possible contingency a devise violates the rule, it cannot stand, and must be held void.' Neely v. Brogden, above."

Since, on May 6, 1942, (the date of testator's death) it was within the range of possibilities that Margene A. Rust (born October 17, 1932) might die before October 17, 1946, (21 years prior to the termination of the trust period) and leave a surviving child, the controlling issue is whether, on the one hand, her interest in the property constituted a vested (base) fee subject to defeasance in case of her death prior to October 17, 1967, or, on the other hand, no title would vest in her unless and until she was living on that date. Stated differently, the issue is whether a) her living until October 17, 1946, constitutes a condition precedent to the vesting of any title in her (appellant's contention), or b) her death prior to that date constitutes a condition subsequent divesting the title vested in her as of the date of her father's death.

■ While the canons which control a proper construction of the will before us are well established and of long standing, it may not be amiss to restate them:

"* * * Here, as in all other instances where a written document is to be construed, the intent of the author, when ascertained, governs. In such ascertainment the universally accepted primary rule (as formulated in Vol. III, sec. 242 of the ALI Restatement of the Law of Property) is: 'The judicially ascertained intent of a conveyor is normally determined by the language employed in the conveyance, read as an entirety and in the light of the circumstances of its formulation.'

"Where, however, the application of this rule 'does not banish all doubt concerning the conclusions to be drawn from such language and circumstances,' then rules of construction may be resorted to, in aid of such ascertainment. The Restatement (sec. 243) gives three such rules which favor that construction which (a) 'conforms more closely to the intent commonly prevalent among conveyors similarly situated'; (b) 'causes results which are more in accord with the public interest'; (2) 'is legally more effective than it would be under any other possible construction.' The comment under this section states that: 'The construction which eliminates the condition precedent adopts the preference stated in Clause (a) for completeness of disposition; follows the preference stated in Clause (b) for early vesting; and accomplishes the greater legal effectiveness favored by the rule stated in Clause (c).' Thus it will be seen that where, from the language of the instrument, when 'read in its entirety and in the light of the circumstances of its formation,' any ambiguity arises which, on the one hand, would import a condition precedent to the vesting of title, or, on the other hand, a present vesting subject to defeasance upon limitation or condition subsequent, the latter construction will prevail over the former." Bryson v. Connecticut G. L. I. Co., 196 S. W. (2d) 532 at p. 537 (Error Ref.).

■ Another well established rule of construction is that if the conditional element is incorporated into the description of or into the gift then the gift is contingent; but, if, after words giving a vested interest, a clause is added divesting it, the gift is vested. See Note 131, ALR, pp. 712 et seq; also the following Texas cases: Anderson v. Menefee, 174 S. W. 904 (Error Ref.); Jones v. Hext, 67 S. W. (2d) 441 (Error Ref.).

■ It is, of course, essential to immediate vesting (possession or enjoyment being postponed) that the person to take be presently in existence and of certain identity. See 2 A. L. I. Rest. Property, sec. 157, com. q. And it is also well established that the fact that the legal title is vested in trustees, with full

discretion as to the application of the income or corpus to the uses of the beneficiary during the trust period, does not militate against the immediate vesting of the beneficial (equitable) title in the beneficiary, for

"No matter how broad or absolute the discretion is, however, the general duties of a trustee to exercise good faith, reasonable care, diligence and skill require that the discretion be exercised upon judicious and responsible consideration subject to review by the court for abuse of discretion." 54 Am. Jur., sec. 180, p. 142.

Furthermore, if the beneficial title vested in Margene A. Rust, "it is immaterial that full possession and enjoyment of the property is postponed beyond the period of a life or lives in being and twenty-one years thereafter, with the ordinary period of gestation added." Anderson v. Menefee, above.

■ Applying these rules to the bequest to Margene A. Rust, clearly and without substantial doubt, we think, the fee title to the residuary estate vested in her immediately upon the death of her father, defeasible upon the condition subsequent of her death prior to October 17, 1967, and subject to the trust provisions.

The first paragraph of clause Four, standing alone, would vest a fee simple absolute title in her, subject to the trust, since in so many words it unconditionally vests the legal title in the trustees for her "use and benefit."

The second paragraph puts a time limit for the duration of the trust, upon expiration of which her title is to be "free of any restrictions whatsoever." The language, "the trust shall terminate and the property * * * shall vest in fee simple in" her, "free of any restrictions whatsoever," is not reasonably susceptible of the construction that her title had not theretofore vested but was to vest initially as of that date. The words, "free of any restrictions whatsoever," can have no other meaning than that her title should thenceforth be free of the restrictions imposed by the trust, otherwise they would be pure surplusage. The vesting at that time was to be free of these restrictions. Even without this last clause, the language employed is that usually found in instruments creating remainders universally held to be vested, and not contingent. A devise by A to B for life with remainder *at his death* to C creates a vested remainder in C upon the death of A, subject to B's life estate. The use of "at his death" or

words of similar import denote the time when the right of possession and enjoyment of the estate begins, and not the time when the estate in remainder vests. See Bufford v. Holliman, 10 Texas 560; 60 Am. Dec. 223; Capables v. Ward, 107 Texas 341, 179 S. W. 856; Chadwick v. Bristow, 204 S. W. (2d) 65, affirmed, 146 Texas 481, 208 S. W. (2d) 888, 17 Tex. Sup. Ct. Rep. 208.

The third and fourth paragraphs are clearly conditional clauses of defeasance, and as such conditions subsequent. The remaining paragraphs merely detail the powers and duties of the trustees. We find nothing in the language of the will, "read as an entirety and in the light of the circumstances of its formulation," which would call for a construction other than that the contingency of the daughter's dying before October 17, 1967, constituted a condition subsequent divesting her title, and that her living until then was not a condition precedent to its vesting.

It would serve no useful purpose to review the cases cited in support of appellants' contention. There is no diversity of view in the authorities as to the principles and canons of construction here involved. Their proper application to the varied instruments in issue sometimes presents problems of construction of great difficulty; and it is this variety in wording and provision that often renders the particular construction given to one instrument of doubtful precedential value in constructing another, although the same principles and canons are applied. None of the cited cases in which vesting of the title is held to be subject to a condition precedent presents a factual analogy to that at bar.

The fourth clause vests the fee simple title in the named contingent remaindermen immediately upon the death of the daughter prior to October 17, 1967, without bodily issue. Under no possible contingency could this paragraph create a perpetuity.

■ The third is the only paragraph which presents any constructional doubt. A doubt which we resolve in favor of a vested remainder upon the death of the daughter prior to October 17, 1967, leaving bodily issue, for reasons we now discuss.

The general plan of the testator seems clear. His primary solicitude was for his daughter, his only child. His principal estate was in extensive ranch property, held in undivided in-

terests, and heavily incumbered. To preserve the estate to his daughter would necessitate wise business management over an extended period of years. He fixed this period as terminating on the daughter's 35th birthday. For obvious reasons he intrusted this management to his two brothers, who owned 2/3 of the remaining interest in the property. The only limitations imposed upon the daughter's otherwise complete fee simple title to the property were 1) the trust provisions which merely postponed her possession and untrammeled enjoyment of the property, and 2) defeasance of her title upon the contingency of her death during the trust period.

His secondary solicitude, should this contingency eventuate, was for his daughter's "bodily heirs", if any, giving them the identical status with reference to the property as that of his daughter. He substitutes them as beneficiaries of the trust and vests complete title at the end of the trust period. The same considerations favoring immediate vesting in the bodily issue and continuing the trust exist in this contingency as originally as to the daughter's title. The considerations as to the trust provisions would not apply in the contingency of the daughter's death without bodily issues.

The only doubt cast upon this immediate vesting is the use of the word "then" before the last word "surviving". In addition to the presumption of early vesting of title, and the general scheme of the testator, there are other considerations which favor construing "then" as referring to the death of the daughter and not the termination of the trust. "Heirs of her body," we think, were clearly used in the sense of "children." This appears from use of the words, "share and share alike." As said by the great Oran M. Roberts, in the leading case of Hancock v. Butler, 21 Texas 804:

"It is presumed it would be difficult to find one case where a man had expressly given his property, to all his descendants, to take *per capita*—children, grandchildren, great-grandchildren, etc. The general sense of American mind, as exhibited in deeds, wills, and in statutes of descent and distribution, is that it is proper to give property to children, grandchildren, etc., they taking *per stirpes*.

The possibility of the daughter having any grandchildren, the child of a deceased child, prior to 1967, was exceedingly remote.

Another applicable presumption is that against intestacy. "A construction which would render the decedent intestate as to any part of his estate is not favored." 44 Tex. Jur., p. 707, sec. 148. In case of the death of the daughter before October 17, 1967, leaving a surviving child or children, all of whom including any descendants should die prior to that date, there would be no one to take under the will, if the title had not previously vested in the daughter's "bodily heirs." The only other limitation over (par. 4) was contingent exclusively upon the daughter's dying before October 17, 1967, without leaving any "issue of her body."

Additionally, it is well settled that:

"* * * the rule against perpetuities is a rule of property and not one of construction; and where the instrument is capable of two constructions, 'one of which would give effect to the whole * * * and the other result in defeating (it) * * *, in whole or in part, preference will be accorded to the construction which will uphold' it. 41 Am. Jur. p. 58, sec. 12. In Neely v. Brogden this rule is stated thus:

" 'On the other hand, if the language used is not free from doubt or ambiguity, then canons of construction may be resorted to, and that interpretation should be adopted which will uphold and not destroy the will. For:

" ' "If this deed, or its parts, are equally capable of two constructions—one, consistent with his (the testator's) having intended to do that which it was lawful for him to do and one which is consistent with his having intended to do that which it was unlawful for him to do—the former will be adopted." Hancock v. Butler, 21 Tex. 804, 808.' " Bryson case, above. (196 S. W. (2d) 543.)

■ If, however, we be mistaken in this construction, and the limitation over to the bodily heirs of the daughter is void as creating a perpetuity, the other provisions of the will would not thereby be affected. In that case the title of the daughter would be defeasible only in case of her death before October 17, 1967, without leaving any heir of her body. See Clarke v. Clarke, 121 Texas 165, 46 S. W. (2d) 658; Brooker v. Brooker, 130 Texas 27, 106 S. W. (2d) 247; 2 A. L. I. Rest. Property, sec. 229, com. e. Under this construction the surviving bodily heirs of the daughter would take the same title from her by inheritance that they would under the will, construed as valid, subject only to the contingency that the daughter should make no different disposition by will, or otherwise part with her title.

■ Appellant for the first time on appeal urges a want of jurisdiction in the trial court to entertain the suit, "because the petition wholly failed to present an adversary controversy which is essential to justiciability under the Uniform Declaratory Judgment Act." Railroad Com. v. Konorva, 174 S. W. (2d) 605, and other cases there cited. All of the issues we have discussed were raised in the pleadings. That they do present adversary controversy is clear. Both under the Uniform Declaratory Judgment Act (Art. 2524-1 VACS), Secs. 1, 2 and 4, and under the law as it theretofore existed in this State, the district courts are authorized to construe doubtful clauses in wills at the instance of executors. See Shindler v. Cooke, 90 S. W. (2d) 292 (Error Ref.); and supporting authorities.

The trial court's judgment is affirmed.

Opinion delivered March 31, 1948.