**U. S. COFFEE & TEA CO. et al., Appellants,**

v.

**The TEXAS & PACIFIC RY. CO., Appellee.**

No. 14931.

Court of Civil Appeals of Texas.

Dallas.

May 20, 1955.

Rehearing Denied June 17, 1955.

Townsend & Townsend, J. N. Townsend, Dallas, for appellants.

Robertson, Jackson, Payne, Lancaster & Walker, D. L. Case, J. T. Suggs, William R. McDowell, Robert Thompson, William G. Duncan, William C. Dowdy, Jr., and Tom L. Farmer, Dallas, for appellee.

YOUNG, Justice.

The petition of appellee Railroad Company in trial court was for Declaratory Judgment, Art. 2524-1, V.A.C.S., and determination of its unrestricted right to remove certain switch tracks on its property so as to devote them to another and different use; defendants being owners or occupants of improved business lots adjacent thereto. Upon trial to the court and decree establishing petitioner's right to the relief sought, this appeal has been duly prosecuted by defendants U. S. Coffee & Tea Company, a corporation, R. F. Dennie, James E. Hunt and J. N. Townsend. (Other defendants not appealing were Westmoreland Estates, Inc., Dallas Tailor and Laundry Supply Co., Inc., Parkland Sportswear, Inc., and J. Walter Hooker.)

In brief of above named appellants a statement of the case is made, viz.: "On February 19, 1953, appellee, Texas & Pacific Railway Co., petitioned the Railroad Commission of Texas for permission to remove its tracks located upon its property in the City of Dallas known as Gould Building property, alleging that it had sold said land to the Times Herald Printing

Company, which contract was conditioned upon the retirement of the tracks;. that public convenience and necessity does not justify the existence of the tracks, and that applicant maintains within a few blocks of this property sufficient sidings and spurs to handle the business tendered at the tracks sought to be removed. After hearing and on June 22, 1953, the Railroad Commission entered its order that the three tracks south of the old T. & P. depot 'may be' removed immediately, that the two tracks north of this building 'may be' removed after not less than sixty days written notice to appellants and others who were defendants in the court below. No appeal has ever been taken from this order by any of the parties. Thereafter on March 13, 1954, Texas & Pacific Railway Co. filed this suit in the District Court of Dallas County, Texas, alleging the ownership of the Gould Building property, particularly describing same, and the tracks located thereon, which it built and maintained at its own cost, its right to remove said tracks, which right had been recognized and confirmed by the Railroad Commission of Texas; that it had sold said property to the Times Herald Printing Co., that said purchaser required said tracks to be removed as a condition to the purchase of the property; that each of the defendants assert the right to compel Texas & Pacific Railway Co. to maintain in place one or more of said tracks and threatened litigation to that end. * * * The trial court entered his declaratory judgment decreeing the ownership of the property described in plaintiff's petition to be in plaintiff, that plaintiff has the unrestricted right to remove from said property any and all railroad tracks located thereon; that defendants have no right to require the continued operation or maintenance of such track or tracks; that plaintiff has the right to devote said property or part thereof to public or private uses other than the uses to which it is now being or heretofore has been devoted; and 'That this judgment does not purport to decide nor is it intended by this judgment to decide the validity or invalidity of any and all orders of the Railroad Commission under docket No. 1232–RO, nor any matters of public convenience and necessity, nor the presence or absence of any discrimination as between shippers and receivers of freight.'"

Texas & Pacific Railroad Company supplements the foregoing by further statement: In effect, that it is a common carrier by rail, owning a tract of land in downtown Dallas known as the Gould Building property. This tract comprises the greater part of Block 218, City of Dallas, with remainder of Block owned or leased by appellants and their codefendants. Five sets of tracks are on the property, constructed and reconstructed by appellee at its own expense. They are owned by the Railroad with no industrial track agreements or interchange contracts relative thereto, nor has it made any statutory dedication of the property. Appellee has contracted to sell the Gould Building premises to the Times Herald Printing Company located on Herald Square across the street —Griffin. Under the contract terms the Times Herald could and did demand removal of these switch tracks; appellee making application to the Texas Railroad Commission for authority to retire the tracks in question, which was granted. One of these tracks is immediately adjacent to property of defendants who have been and are receiving warehouse-door delivery of rail carload freight therefrom without bearing any maintenance or construction expense. After issuance of the Commission's order which, appellee says, decided all public convenience and necessity issues, defendants Dallas Tailor & Laundry Supply Company and Parkland Sportswear denied appellee's right to remove the tracks, threatening injunction proceedings; which, as their attorney testified, were not filed because of "subsequent negotiations". Then followed the instant suit to detemine whether defendants owned any right to the tracks over and above those which could be decided by Railroad Commission action; the trial court excluding from its judgment any matter dealt with by the Commission in its order of June 22, 1953.

Points of appeal in wording and substance are as follows: (1) Defective judgment description of the Gould Building property in omission of a stipulated boundary call; the court's error, (2) "in decreeing that appellee railway company has the unrestricted right to remove the switch or spur tracks involved herein, which do now and have for years past served appellants and the public generally in shipping and receiving freight, being the two most northerly of said tracks"; (3) "in not dismissing appellee's suit as to these appellants because no justiciable controversy was alleged or proved"; (4) "in rendering an advisory opinion or decree"; (5) "in decreeing that appellee would not be liable to appellants for damages, if any, they may suffer in the future by virtue of the abandonment and removal of said tracks." We will vary from a discussion of these points in the order presented by appellants.

Our Uniform Declaratory Judgments Act, Art. 2524-1, V.A.C.S., provides in part: "Section 1. Courts of record * * * shall have power to declare rights, status, and other legal relations * * *." "Sec. 5. The enumeration in Sections 2, 3, and 4 does not limit or restrict the exercise of the general powers conferred in Section 1, in any proceeding * * * in which a judgment or decree will terminate the controversy or remove an uncertainty." All defendants interposed general denial to the allegations of appellee; the effect of which was to negative petitioner's claim of an unrestricted right to remove the particular tracks. Not only that, but appellants assert, perforce of a long continued user, that there removal would be detrimental to them and in fact amount to a discrimination. Manifestly, an actual adversary controversy is thus presented; Sperry & Hutchinson Co. v. Margetts, 25 N.J.Super. 568, 96 A.2d 706; which may be determined from the pleadings. Rust v. Rust, Tex.Civ.App., 211 S.W.2d 262, 147 Tex. 181, 214 S.W.2d 462. As pointed out by counsel for petitioner: "At the time of the trial, appellee either had the right to remove the tracks or it did not; appellants either had the right

to require the continued presence of the tracks adjacent to their place of business, or they did not. Their respective rights were vested and present as of that time. The appellee's duty to remove the tracks under its contract of sale coupled with the dispute over its right to do so, made the situation one ideally suitable for a declaratory judgment."

But appellants say that the decree forecloses their right of action for damages, if any, in the future "by virtue of the abandonment and removal of said tracks"; arguing the instant proceedings to be "but an attempt, and is probably appellee's primary purpose in bringing its suit, to adjudicate in advance that appellee will not be liable for damages if it removes and abandons said tracks, even though the facts giving rise to such damages, if any, and the amount thereof, are at present nonexistent and lie in the future. This record is devoid of any threats by appellants to sue appellee. Hence, any damages suffered by appellants because of the removal or abandonment of said tracks must be based on facts yet to arise." The same contention was made in Scott-Burr Stores Corp. v. Wilcox, 5 Cir., 194 F.2d 989, 990, a suit involving right to renewal of lease, and instituted within the primary term; the court holding that "While the date of the beginning of the claimed extended term was in the future the assertion of the right to its enjoyment was presently being made. The facts of the case disclosed an actual controversy, and the settlement of such controversies 'before they ripen into violations of law or some breach of contractual duty' is a fundamental purpose of the Declaratory Judgment Act, * * *." In the same connection Borchard, Declaratory Judgments, 2nd Ed., p. 422, states: "The Declaratory Judgments Act necessarily deals with present rights, but it is a present right to have a judicial assurance that advantages will be enjoyed or liabilities escaped in the future. Courts continually declare rights which have not become fixed under an existing state of facts, but are prospective only; they may not, however, be so remote or speculative as to be hy-

pothetical and abstract. * * * courts no longer hesitate * * * to declare legal relations to become active in the future, provided there is a tangible present interest in their determination and a useful purpose is thereby served."

To the merits, appellants say that Art. 6350, V.A.C.S., prescribes the only method open to appellee for abandonment of these switch tracks, which method was not here followed; and that in consequence, the trial court lacked jurisdiction to entertain the suit or order a removal of tracks. Art. 6350 provides in part: "When any railroad corporation * * * desires to * * * abandon any part of *its line* within any city containing fifty thousand or more inhabitants * * * it shall present its petition * * * to the governing body * * * supported by the names of not less than five hundred resident citizens * * *" (emphasis ours), and requires a hearing by such governing body as a prerequisite to action on part of the Railroad Commission of Texas. Otherwise stated, appellants submit that Declaratory Judgment proceedings cannot be substituted for above statutory procedure and constitutes a "judicial usurpation of administrative duties imposed by the Legislature upon cities in the first instance, then on the Railroad Commission."

Art. 6350 has not been interpreted by Texas Courts but, as stated by appellee, we think the word "line" as used therein refers to that part of a railroad serving as a connecting link between separate localities as distinguished from mere service or auxiliary tracks, commonly designated as sidings or spurs; a railroad line, generally, meaning a " 'regular line of vehicles for public use operated between distant points, or between different cities' ". Bruce Transfer Co. v. Johnston, 227 Iowa 50, 287 N.W. 278, 280; 74 C.J.S., Railroads, § 1, p. 341. This distinction between the "line" of a railroad and its sidings or spurs is to be gathered from coexisting statutes; for example: Art. 6316a: ."Every railroad company owning * * * a *line* of railroad in this State shall have authority and power to construct and operate *spur* or *industrial* tracks * * *." Art. 6490: "Every railroad company operating a *line* of railroad within this State shall provide sufficient tracks, switches, *sidings,* yards, depots, motive power * * * for receiving and delivering freight * * *." Art. 6534: "Any railroad company * * * whenever the Commission shall find it advisable to authorize it to do so, may construct * * * an additional *line* of road * * * together with all necessary *sidings,* switches and turnouts * * *." (Emphasis ours.) Obviously it was the Legislative intent by enactment of Art. 6350 to protect a city, so populated, from a complete deprivation of its railroad facilities except upon due adherence to statutory procedure; in no wise applicable, however, to a recurring necessity for removal or relocation of railroad service tracks incident to city growth and expansion. A construction of Art. 6350 requiring of appellee the obtainance of signatures of 500 resident citizens before removal of mere auxiliary tracks, in our opinion would render it unduly oppressive and burdensome; in short, of questionable validity as an unreasonable exercise of the police power. Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385, quoted with approval in H. & T. C. Ry. v. City of Dallas, 98 Tex. 396, 84 S.W. 648; 16 C.J.S., Constitutional Law, § 198, p. 573.

The omission of the call "along the line of said building" in the judgment is inconsequential; and the recitals thereof will be deemed corrected so as to include such call, thereby conforming to prior stipulation by the parties.

All points of error are accordingly overruled and judgment of the trial court affirmed.