CASE 72—PETITION ORDINARY—DECEMBER 14.

# Jones, Etc. v. Jones, Etc.

**APPEAL FROM CLARK CIRCUIT COURT.**

1. EVIDENCE—TRANSACTIONS WITH DECEDENT.—In an action by one against the administrators of a decedent for the possession of notes payable to the deceased, claiming that they were given to him by her a short time before death and afterwards taken from him by her said administrators, it was not proper to permit plaintiff to testify on the trial to statements made by him to one of the administrators when the latter demanded possession of the notes as to what occurred between him and the deceased at the time of the alleged gift and delivery.

2. INSTRUCTIONS.—Upon the trial of such an issue an instruction by the court to the jury that they should find for the plaintiff if they believed that deceased delivered the notes to plaintiff with the purpose of giving them to him, even though they were not assigned in writing, was erroneous and misleading, the latter clause thereof being calculated to make the impression upon the jury that the written assignment of them was wholly unnecessary, and was of no consequence.

3. SAME.—It was also error to instruct the jury that the mere declarations of the decedent of her purpose to give the plaintiff her property, or some portion of it, would not vest him with any right or interest in the notes, unless they believed from the evidence that the decedent delivered the notes to the plaintiff for the purpose and with the intention of giving them to him.

4. PEREMPTORY INSTRUCTION.—In view of the fact that the plaintiff had possession of the notes after the death of the decedent and of the evidence of declarations by her to make provision for him, the case was properly submitted to the jury, and a peremptory instruction was properly refused.

BECKNER & JOUETT AND J. M. BENTON FOR APPELLANTS.

1. The court improperly permitted the appellee to state on the trial that he had told his father that his aunt, who was dead, had given him the notes and to detail the conversation in which he had told his father all about what his aunt had said and how he came by the notes. This is nothing more nor less than an attempt to do indirectly what the law says shall not be done directly. Civil Code, sec. 606, sub-sec. 2; Cord v. Cord, 39 N. Y.,

317; Hardin's Adm'r. v. Taylor, 78 Ky., 593; Manion's Adm'r. v. Lambert's Administratrix, 10 Bush, 295; Rice on Evidence, page 540, sec. 264; Harpending's Ex'or. v. Daniel, 80 Ky., 454.

2. Instruction No. 1 was highly objectionable because it pointed out and called particular attention to the fact that it was not necessary that the notes should be assigned in writing, and thereby singled out the very strongest circumstance upon which the plaintiff could rely in his argument.

3. There being no direct competent evidence of the gift, and the expressions by the decedent of her intention to provide for the plaintiff not being evidence of the gift, and the possession of the note by the plaintiff without a written assignment of itself not being sufficient evidence, the peremptory instruction should have been given.

HATHAWAY & CARDWELL FOR APPELLEE.

(Brief not in the record.)

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

Mary A. Jones died intestate and unmarried on the 9th day of July, 1895, leaving as her heirs at law two brothers and a number of nephews and nieces. Among the latter was the appellee, William Jones, Jr. Appellants qualified as her administrators, and this suit at law was instituted by appellee against them, alleging that he was the owner and in the possession of two promissory notes payable to Mary A. Jones, one of them being for $1,200, due by L. P. and I. C. Skinner, and the other for $225, due by John Jones; that they had been given to him by the payee on the 8th day of July, 1895 (which was the day immediately preceding her death); that he had accepted the gift and had held possession of the notes until they were taken from him, without right, by the appellants on the 15th day of July, 1895, and that they had refused to surrender or return the possession thereof to him, and claiming damages.

Appellants answered, denying that appellee was the

owner of either of the notes mentioned in the petition, or that
they had without right taken possession of same, or that the
payee therein, Mary A. Jones, had ever given or delivered
the notes in question to appellee to be held as his property,
or had delivered them to him at all; and alleged that the
notes belonged to, and constituted a part of the estate of
Mary A. Jones, deceased, never having been disposed of in
any way by her previous to her death.

The issue being tried, the jury found the appellee to be the
owner of the notes in question, and judgment was rendered
accordingly; and from that judgment appellants prosecute
this appeal alleging numerous errors on the part of the court
at the trial of the case, in allowing incompetent testimony
on behalf of appellee to go before the jury.

Most of these objections are not well taken, and we will
consider only those which appear to be material and prejudi-
cial to appellants. The appellee was permitted to detail in
his examination in chief statements which he claimed to have
made to his father, one of the administrators of decedent and
one of the appellants here, at the time demand was made
upon him for the possession of the notes in contest, in which
he recited how he had acquired possession of the notes, and
what occurred between him and his dead aunt at the time
of the alleged gift and delivery thereof; and two of the
daughters of appellee, Olive and Pearl Jones, were permitted,
while they were being examined in chief, as wit-
nesses for appellee, to detail the alleged conversation be-
tween appellee and his father, which they claimed to have
heard, and in which he undertook to repeat conversations
had with his aunt at the time the alleged gift was made by

Jones, etc. v. Jones, etc.

her and transactions had with her at that time, and also statements made by appellee with regard thereto to his family in the absence of any of the appellants.

This testimony and its probable effect upon the jury can be best understood by quoting the parts specially objected to. While appellee was on the witness stand and being examined in chief as to what occurred at the time the demand was made upon him for the possession of the notes in question, he was asked by his attorney this question: "What answer did you make him?" to which witness responded: "I told him that I would not give them up; that they were mine; that aunt had given them to me, and that I would not give them up," which question and answer were excepted to. The witness was then asked: "Did you tell him how you got the notes?" and he answered: "Yes." His counsel then said: "State what you said about it," which was excepted to, objection overruled and witness permitted to respond: "I told him that aunt had given me the notes; that she told me to look over some papers there and see what there was; that I looked over them and found Mr. Skinner's note and my father's note and a note for $150 with the name torn off; that I told her the note was no good with the name torn off, and that she said: 'No, the note was no good with the name torn off.'" These questions and answers were excepted to at the time and the exceptions overruled. The testimony of the witness, Olive Jones, which was specially objected to, is as follows: She was permitted to testify on her examination in chief that she heard her father say to her grandfather, one of the administrators and one of the appellants here: "I have some notes Aunt Mary Jones gave me. I

guess you thought she left me out, but Aunt Mary never for-
got me." And the witness, Pearl Jones, during her exam-
ination in chief, was asked the question: "When did you
see the notes? Was it before or after the death of the intes-
tate?" and she replied: "She gave them to Pap July 8th;
she died July 9th." Appellants objected to this answer and
moved the court to exclude it from the jury, which motion
was overruled. And further along this witness was asked:
"How did you happen to see them?" She responded: "He
took them out and said that they were the notes Aunt Mary
had given him," and that this conversation occurred at her
father's supper table on the evening of July 8th, at which
no one was present but the family, consisting of herself, bro-
thers and sisters.

The question which was in issue, and which was to be de-
termined by the jury, was whether Mary Jones had given
the notes in question to appellee at the time and under the
circumstances alleged. It appears, from the testimony of
appellee that these notes had never been endorsed by the
payee therein, and that nobody was present at the time of the
alleged gift and delivery thereof to him except himself and
his wife; and as the wife was not competent to testify for her
husband, and the husband, under the provisions of subsection
2, section 606 of the Civil Code, was made incompetent to tes-
tify directly concerning any verbal statements of, or any
transactions with, his deceased benefactor, there was no wit-
ness competent to testify directly as to what occurred be-
tween appellee and the decedent at this alleged interview,
and these facts had, therefore, necessarily to be determined
largely by circumstantial evidence; and any testimony which
tends to establish the alleged gift at this interview is of vital

importance to the litigants in the determination of this ques-
tion, and it is manifest that it was the duty of the trial judge
to exercise the greatest care to prevent incompetent testi-
mony which bore on these facts from getting before the
jury.

At common law litigants were not permitted to testify at
all on the trial of actions in which they were personally inter-
ested.  This rule of the common law was changed by statute,
but in making this change the Legislature were exceedingly
careful to make exceptions to the general rule, and it was
declared that "No person shall testify for himself concerning
any verbal statement of, or any transaction with, or any act
done or omitted to be done, by one who is dead when the tes-
timony is offered to be given, except for the purpose and to
the extent of affecting one who is living, and who, when
fourteen years of age and of sound mind, heard such state-
ment, or was present when such transaction took place or
when such act was done or omitted to be done."   (Subsection
2, section 606, Civil Code.)

Similar restrictions upon the testimony of living witness-
es against the estates of deceased persons are found in the
statute laws of most of the States, and the purpose and in-
tention of this exclusionary rule is that the surviving party
to the transaction in issue shall not have the unfair advant-
age of giving his version of the matter, when the other and
adverse party is prevented by death from being heard to
contradict or to explain it (Card v. Card, 39 N. Y., 317).
And this view has been sustained by adjudications of this
court.  In the case of Harpending's Adm'r v. Daniels, 80
Ky., 449, it was said:  "The design of the section was to

place parties to an action, or those interested therein, on an equal footing when their rights were being passed on. To permit a party interested to testify concerning a transaction with one who is dead and not present to testify at the same time and in the same manner would give an advantage in many ways to the living not tolerated by the letter or spirit of the Civil Code or consonant with justice and equality."

The language of the Code is sweeping and imperative, and admits of no exceptions other than those pointed out in the statute itself. By the admission of the testimony in question appellee was permitted, indirectly, to get before the jury his statement of what transpired at the time of the alleged gift and delivery of the notes sued for; in other words, whilst he was admittedly incompetent to testify directly as to these transactions, yet it was held that he was competent to testify to what he had said in regard to those transactions on another occasion to one of the parties defendant. It can not be contended that the administrator, to whom these statements were made, had any personal knowledge thereof, or could have denied the statements of appellee. If a party asserting a claim against the estate of one who is dead can voluntarily detail the facts of such alleged gift to a third person, who happens to be a party to the action, and then upon the trial be permitted on his examination in chief, and to support his claim, detail such conversation on the witness stand, the provision of the Code referred to becomes of no value, as by indirection he gets these transactions before the jury as effectually as if he had been permitted to testify thereto directly.

It was perhaps competent for appellee to have testified

that at the time demand was made upon him for the posses-
sion of the notes that he refused to deliver the possession
thereof because he owned them under a gift from decedent,
but the jury should have been carefully admonished that
even this statement was only. permitted for the purpose of
explaining his possession, and was not to be considered as
any evidence of the. fact of the alleged gift or the justness
of appellee's claim to the notes in contest.

The testimony of the daughters detailed above is a palpa-
ble evasion and violation of the section of the Code under
consideration.   They were permitted to testify as to state-
ments made to them by their father, who was present in
court and who was not competent under the law to state the
facts himself.   Appellants also objected to the first instruc-
tion, which reads as follows: "If the jury believe from the
evidence that Mary Jones during her lifetime delivered the
notes in controversy to the plaintiff, with the purpose and in-
tent of giving them to him, they should find the plaintiff to
be the owner of them, even though they were not assigned in
writing."

It seems to us that the whole law of this case was substan-
tially given in this instruction without the addition of the
words, "even though they were not assigned in writing," for,
whilst it can not be contended that an assignment in writing
was necessary to transfer the title to the notes in question,
yet the fact that they had no such endorsement on them was
one which the jury had a right to consider in arriving at a
conclusion.   Especially is this true, since the mere naked
possession by appellee of these notes, payable to decedent, is
not *prima facie* evidence of ownership against the personal

representative of the payee therein (Gano v. McCarthney, 79 Ky., 409; Bradford v. Ross, 3 Bibb, 238; Bell v. Morehead, 3 A. K. Marshall, 1043; Daniel on Negotiable Instruments, section 812). The addition of these words to the instruction is objectionable because the court thus singled out and called attention to a special and material fact in the case, and in a way that was calculated to make the impression upon the jury that it was of no consequence and was wholly unnecessary. And for the same reason we think the court erred in the second instruction in telling the jury that the mere declarations of decedent of her purpose to give plaintiff her property, or any portion of it, would not vest him with any right or interest in the notes unless they believe from the evidence that Mary Jones delivered the notes to the plaintiff for the purpose and intent of giving them to him. This testimony as to declarations made by decedent of her intention to provide for appellee was competent under the facts of this case, and ought to have been allowed to go to the jury without any expression of opinion on the part of the court as to the degree of weight or credit that should be given them.

It is contended by counsel for appellants that it was the duty of the court to have given a peremptory instruction to find for the defendants on the trial of the case, as there was no direct evidence of the gift, and that mere possession by plaintiff of the notes was not sufficient to make out a *prima facie* case in his behalf. But in view of the testimony from highly respectable witnesses concerning the declarations made by decedent of her intention to make provision for appellee, coupled with the fact that he was found in possession of this

property, we think the case was properly submitted to the jury.

But for the reasons indicated the judgment is reversed and the cause remanded for proceedings consistent herewith.