SINGER v. SINGER et al.

No. 11656.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 18, 1946.

Rehearing Denied Oct. 16, 1946.

Russell Morton Brown and V. W. Prewett, both of Corpus Christi, and L. H. Lowe, of Edinburg, for appellant.

Keys, Holt & Head and I. M. Singer, all of Corpus Christi, for appellees.

NORVELL, Justice.

The controlling question upon this appeal is whether or not William Singer by his last will provided for a trust which could not be terminated by his executors until 10 years after his death. The testator died on August 14, 1944.

The wife of William Singer predeceased him, and the will provided that in such event his property should pass to and vest in the executors named in the will, in trust, for the benefit of his children or their substitutes.

The will names three executors: George Clark, Jr., Robert C. Singer and I. M. Singer, and authorizes a majority to act for the estate.

There are no debts outstanding against the estate, and the executors, George Clark, Jr., and I. M. Singer, intend to distribute the assets of the estate among the beneficiaries named in the will. The remaining executor, Robert C. Singer, opposed this contemplated action and brought suit in the District Court to enjoin distribution. He was unsuccessful below and brings the case here.

After setting up a trust for the benefit of testator's children, as above stated, the will contains the following paragraph, which is relied upon by the appellant as supporting his position: "IV (a). As my estate consists largely of real estate which at the present time is bringing in good returns, as well as increasing in value, it is my desire that my Executors shall keep said estate together for ten years after my death, so that same shall not be unduly sacrificed by a hasty partition or sale thereof."

The will also contained the following provisions: "IV (c). It is my desire, and I so direct, that my Executors shall not be compelled to partition and distribute my estate, except as hereinafter provided, until after ten years from the date of my death. It is my desire and intention that the income or cash on hand of my estate not necessary to defray current expenses, including repairs, taxes, insurance or other expenses, shall be used to provide a more or less regular monthly sum for the support of each of my said six children or their respective substitutes, and I expressly authorize my Executors to make such monthly payments of approximately Seventy-five ($75.00) Dollars each, for each of said six shares for the purpose of carrying out the intention expressed in this paragraph. Said Executors, however, shall never be compelled to make any final or partial distribution of my estate, within less than ten (10) years after my death,

other than as they may see fit, except said monthly payments out of the net profits from the conduct of the business of my said estate."

As to the powers of the executors, the will provides: "IV (b). It is my desire, and I so direct, that my Executors or Trustees, or their successors, shall keep said property belonging to my estate, while under their control and management, insured against fire and other hazards, pay taxes on same, collect the rents and income therefrom, sell, exchange, or otherwise dispose of all or any part thereof, invest or reinvest funds derived therefrom, pay their own fees and the expenses of management of said estate as hereinafter provided for, and to do all things proper and necessary, whether herein specifically enumerated or not, which a majority of my Executors may deem is to the best interests of the Estate as a whole."

Viewing the will in its entirety, it seems reasonably clear that the intention of the testator was to provide a trust devise which would prevent the beneficiaries thereunder from forcing a distribution of the assets of the estate when in the opinion of the executors such distribution would result in unduly sacrificing the property of the estate.

The testator, undoubtedly, had confidence in the business judgment of the executors, as evidenced by the broad grants of power to them, and provided that their judgment should be controlling during the 10-year period following his death.

Paragraph IV-c contains the wording that the executors "shall never be compelled to make any final or partial distribution of my estate, within less than ten (10) years after my death, other than as they may see fit, except said monthly payments out of the net profits from the conduct of the business of my said estate." From this language it is implicitly suggested that if the executors see fit, they may make a partial or final distribution of this estate prior to the expiration of the 10-year period.

If Paragraph IV-a be construed as mandatorily requiring that the estate be not distributed for a 10-year period, a conflict in provisions would result.

The word "desire" alone is used in Paragraph IV-a, and not the phrase "desire and direct" as appears in other portions of the will. In its ordinary or natural meaning, the word "desire" is precatory and not mandatory. Byars v. Byars, 143 Tex. 10, 182 S.W.2d 363; 1 Bogert, Trusts and Trustees, § 48, p. 223. It should be given its ordinary and natural meaning when the effect of such construction is to harmonize the various directions and provisions of the will. We sustain the construction placed upon the will by the trial court. Stanley v. Henderson, 139 Tex. 160, 162 S.W.2d 95; 44 Tex.Jur. 710-714, §§ 140-152; 1 Bogert, Trusts and Trustees, § 48, p. 225.

By cross-point it is urged that the trial court erred in taxing the costs below against the estate of William Singer, deceased. This cross-point is sustained. Rules 131 and 141, Texas R.C.P., read as follows:

"Rule 131. Successful Party to Recover. The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided."

"Rule 141. Court May Otherwise Adjudge Costs. The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules."

The judgment contains no statement of the reason for this action. Consequently, the taxing of costs against the estate cannot be sustained under Rule 141. J. I. Case Threshing Machine Company v. Manes, Tex.Com.App., 254 S.W. 929. Under Rule 131, the costs should have been recovered by the successful parties below, the majority executors and taxed against the appellant personally.

Although appellant brought this suit as one of the executors of the estate, he was not acting on behalf of the administrative authority of the estate which was vested in a majority of the executors under the terms of the will. "The mere fact that a representative appears in an action

in his representative capacity does not protect him from personal liability for costs if he is unsuccessful." 34 C.J.S., Executors and Administrators, § 820, p. 927. In order that an unsuccessful minority executor be relieved of personal liability for costs in a case involving the construction of a will, a good cause for such action must be stated on the record as required by Rule 141.

The judgment of the trial court is reformed so as to provide that costs in the trial court be taxed against appellant, Robert C. Singer, personally. The judgment as so reformed is affirmed.