SINGER et al. v. SINGER.

No. 9867.

Court of Civil Appeals of Texas. Austin.

May 3, 1950.

Rehearing Denied May 31, 1950.

Kemp, Lewright, Dyer & Sorrell, Allen Wood, Bill Prewett, all of Corpus Christi, Louis P. Pink, of Los Angeles, Cal., L. Hamilton Lowe, and Archer & Archer, of Austin, for appellants.

Keys & Holt and I. M. Singer, both of Corpus Christi, for appellee.

GRAY, Justice.

Robert C. Singer, Sr., died July 26, 1948, and left surviving him one child, Robert C. Singer, Jr., the child of a first marriage, who is appellee, and Mariam C. Singer, the wife of a second marriage, who is appellant.

The suit was brought by appellee against appellant and others for the recovery of real and personal property distributed to Robert C. Singer, Sr., during his lifetime by the executors of the estate of William Singer who survived his wife and who died in 1944, leaving surviving him six children, Robert S. Singer, Sr., being

one of them. He left a will naming three executors (Robert C. Singer, Sr., being one) to hold his property in trust for the benefit of his children, or their substitutes; directing his estate be free from a forced partition and distribution for ten years after his death, and providing that upon the expiration of ten years after his death a final partition and distribution should be had.

This will was before the San Antonio Court of Civil Appeals in Singer v. Singer, 196 S.W.2d 938, Er.Ref.N.R.E.

The will of William Singer, in part, provides:

"In the event that my wife, Lizzie Singer, should not survive me, then it is my will and desire, and I direct as follows: First, that all the property, real, personal and mixed, that I may die seized and possessed of shall pass to and vest in my above named Executors, in trust, for the benefit of my children or their substitutes, hereinafter set out, subject to the terms and conditions, to wit:

"(a) As my estate consists largely of real estate which at the present time is bringing in good returns, as well as increasing in value, it is my desire that my Executors shall keep said estate together for ten years after my death, so that same shall not be unduly sacrificed by a hasty partition or sale thereof.

"(b) It is my desire, and I so direct, that my Executors or Trustees, or their successors, shall keep said property belonging to my estate, while under their control and management insured against fire and other hazards, pay taxes on same, collect the rents and income therefrom, sell, exchange, or otherwise dispose of all or any part thereof, invest or reinvest funds derived therefrom, pay their own fees and the expenses of management of said estate as hereinafter provided for, and to do all things proper and necessary, whether herein specifically enumerated or not, which a majority of my Executors may deem is to the best interests of the estate as a whole.

"(c) It is my desire, and I so direct, that my Executors shall not be compelled to partition and distribute my estate, except as hereinafter provided, until after ten years from the date of my death. It is my desire and intention that the income or cash on hand of my estate not necessary to defray current expenses, including repairs, taxes, insurance or other expense, shall be used to provide a more or less regular monthly sum for the support of each of my said six children or their respective substitutes, and I expressly authorize my Executors to make such monthly payments of approximately Seventy-five ($75.00) Dollars each, for each of said six shares for the purpose of carrying out the intention expressed in this paragraph. Said Executors, however, shall never be compelled to make any final or partial distribution of my estate, within less than ten (10) years after my death, other than as they may see fit, except said monthly payments out of the net profits from the conduct of the business of my said estate.

"(d) In making such monthly payments and making all partial and final divisions and distributions of my estate, as herein provided for, it is my will and desire, and I so direct, that same be divided into six equal shares or portions, and one share or portion be paid or conveyed to each of my following named six children, or their respective substitutes as herein provided, to-wit: * * *

"(4) One share to my son, Robert C. Singer.

*   *   *   *   *   *

"(e) In the event any one or more of my above named children should die leaving no child or children or descendants thereof surviving them, then that portion of my estate which has not been distributed but which would go to such child or children if they were alive, and that portion of my estate which has been distributed to them and of which they may, within twenty-one (21) years from the date of my death, die seized and possessed, shall revert to the other of my six named children, share and share alike, or to the descendants of my other children as may be dead leaving descendants. In the event any one or more of my above named children should die leaving a child or chil-

dren or descendants thereof surviving them, then that portion of my estate which has not been distributed but which would go to such child or children if they were alive, and that portion of my estate which has been distributed to them and of which they may die seized and possessed shall pass to and vest in their respective natural child or children, share and share alike. By the term 'child or children or the descendants thereof' of my above named children as used herein, is meant natural children and not adopted children, and I hereby recognize as my natural grandson, Robert Singer, son of my son Robert C. Singer.

\* \* \* \* \* \*

"Fifth: Upon the expiration of ten (10) years from my death there shall be a final division and distribution of my estate in the portions above set out, allowing for gifts, whether made in money, property or loans, as above provided. Such division and distribution shall be made within such time as the Executors shall deem to be within good business judgment. If any of my children or their substitute should desire to receive property, in lieu of cash, for their share or any part thereof, they may do so by taking such property at a price to be agreed upon, in writing, by all of my children, or their respective substitutes, and when such agreement as to price has been reached then such property shall immediately be conveyed to the one willing to accept it and the amount of the agreed price thereof shall be charged against the proper share. If no agreement can be reached, then the person desiring to receive such property may accept same at the same price as the best price that could be obtained at a cash sale, within the judgment of the Executors. Property not acceptable as cash shall be sold and the proceeds divided.

"Sixth: No child of mine, nor their substitute, shall have any right to sell, transfer, convey, or encumber any of the property or any part of the property or estate disposed of under the terms of this will until after the actual receipt of such property by such child or substitute. All such payments of money or property which are made by the Executors of this will to my child or children or their substitutes shall be made to them personally, or in the case of minors, to their guardian, and no part of any such income, money or property shall ever be transferred or assigned by any of them nor be subject to any judicial process against any of them at any time before the same has been paid over to the beneficiary as herein provided. No part of my estate of property disposed of under the terms of this will shall be seized, attached or in any manner taken by any judicial proceedings or court process against any of my children or their substitute until the actual receipt of such property or estate by such children or substitutes."

The term appellant here means Mariam C. Singer, unless other appellants are mentioned by name; the will of William Singer will be referred to as the will, and Robert C. Singer, Sr., as Singer.

The issues here presented involve the following items of property: (1) a check for the sum of $16,500; (2) a check for the sum of $5,082.71; (3) $5,429.67 on deposit with the First State Bank of Corpus Christi; (4) one promissory vendor's lien note for $5,300, executed by Willie Bezdek in favor of William Singer Estate and referred to as the Bezdek note; (5) Lots 8 and 9 of Block 105, Beach Portion, City of Corpus Christi, referred to as the Drawbridge Property; (6) Lot 23 of Block 25, Arcadia Subdivision, City of Corpus Christi, referred to as the Florida Street Property, to the extent of 7000/8500 thereof; and (7) money collected as rents on the Drawbridge Property during the lifetime of Singer.

On July 14, 1948, Singer was directed by his doctors to enter a hospital in Corpus Christi. Before going to the hospital, and while at his home in Corpus Christi, Singer had his attorney, Hon. Bill Prewett, called to the home. The attorney was instructed to draw a deed conveying the Drawbridge Property to appellant, which deed was prepared, was duly executed by Singer and was delivered into the custody of the attorney, who filed it for record at 9:35 o'clock a. m. on July 26, 1948. Sing-

er died at about 7 or 8 o'clock a. m. on July 26, 1948. The deed recites a consideration of ten dollars and other good and valuable consideration paid together with love and affection. The only persons present in the room with the grantor at the time the deed was executed were: the attorney, Mr. Dowling, the notary who took the acknowledgment and who, also, witnessed the deed, and Mr. Collier who was called in to witness it. These witnesses do not contradict each other.

The deed was read over to Singer, who then took it, made corrections of an initial at four places in the deed, then stated it was what he wanted and signed and acknowledged it. After the deed was acknowledged and witnessed the notary and Mr. Collier left the room and probably were not present together in the room.

Mr. Prewett, the attorney, said that after the deed was executed, appellant was called into the room and that Singer handed the deed to her and said: "Mama, here is a deed. This is to the Drawbridge. I want you to have this." The attorney further testified: "I think then perhaps she asked the question as to what this is all about. He said, 'You go on and let Bill file the record, have this recorded,' and then he turned to me and said, 'Bill have this recorded and put the stamps on it,' and he said, 'When it comes back send me a bill for it.'" He further said appellant had the deed at the time and that these instructions were never revoked. Appellant said she handed the deed "to Mr. Prewett as I was instructed to do."

The deed was carried by Mr. Prewett to his office and there kept until it was filed for record. His failure to sooner record the deed was explained by him by saying he was constantly at the hospital or the Singer home from the time the deed was executed until Singer died.

Before going to the hospital, Singer endorsed and delivered to appellant Items (1) and (2), supra, and instructed Mr. Prewett to assist appellant in cashing them. With these checks and another small check, appellant opened an account with the Corpus Christi Bank and Trust Company, from which account she drew, on July 16th,

$20,000 and delivered the same to Mr. Prewett who kept it until after Singer's death, when he delivered the same to appellant, less a fee of $5,000 to himself.

Mr. Prewett was made a party defendant to this cause.

Also, while at his home, Singer took a bundle of papers from a metal box, handed them to appellant, and said: "I want you to keep this. This bears six per cent. It will be an income for you." This bundle of papers included the Bezdek note and a deposit book of account of Singer with the First State Bank of Corpus Christi. At the time this account was $5,429.67. At least two checks distributed under the will, one for $6,955.18 and one for $2,905.60, had been deposited in this account. Other checks of Singer had also been deposited and the account, from time to time, had varied in amount by reason of deposits and withdrawals.

At the time of the trial, appellee was thirty-two years of age, had not resided with his father since infancy, did not see his father until after he was twenty-one, and during which time had not heard from him. After maturity appellee saw his father on only a few occasions, had never visited in his home, and had not met appellant prior to Singer's death.

Singer died testate and by codicil to his will bequeathed to appellee: "* * * the sum of ten thousand ($10,000.00) if, at the time of my death, I have received my full portion or share of the estate of William Singer, otherwise he is to receive One Dollar only." The remainder of the estate was devised and bequeathed to appellant for life, with the remainder to Singer's two stepsons. Appellant was named independent executrix and so qualified.

Appellant was familiar with the terms of the William Singer will, the same had been discussed by her and her husband, with other members of the William Singer family, and by them in her presence.

Several witnesses placed themselves in position to observe Singer on July 14, 1948, and expressed their opinions that he was rational and knew what he was doing. The doctor said he was rational and knew

what he was doing when he was talking, "but there were times when I don't think he was." He was not present in the room at the time of the occurrence of the transactions under inquiry here. Another doctor. testified that on July 6, 1948, Singer told him he was worried and that his wife was not satisfied.

Items 1, 2, 4 and 5, supra, were admittedly distributions under the will; the other items will be discussed as we reach them in the opinion.

In answer to special issues the jury found that Singer intended to part with the control, during his lifetime, of the money evidenced by the checks mentioned in Items 1 and 2; that he did not make delivery of the deed to Item 5—Drawbridge Property; that he did not make a gift to appellant of Item 4—the Bezdek note; that Item 3 represented a distribution under the will to the full amount thereof. No issues were submitted as to Items 6 and 7.

Judgment was rendered awarding Items 1, 2, 6 and 7 to appellant, and Items 3, 4, and 5 to appellee.

Both parties have appealed.

We think that for all purposes relevant to the points here presented (except as to the rule against perpetuities) a correct interpretation of the will may be stated by applying and quoting the language of Chief Justice Hickman in Harrell v. Hickman, 147 Tex. 396, 215 S.W.2d 876.

By the will, William Singer devised and bequeathed one-sixth of his property to Singer in fee simple, provided, however, that his right of possession, enjoyment and disposition thereof was made subject to the same being distributed to him by the trustees or executors of the estate. "That estate was limited, however, (Par. e, above) by the language which had the effect of converting it into a conditional fee or, as it is sometimes called a defeasible fee, the condition of the defeasance being that in the event (Singer) should die seized and possessed of any of the property, then such property (also such undistributed property to which he was entitled) should pass to and vest in the various * * * individuals named in the will."

The will places no restriction on the right of Singer during his lifetime to dispose of any property coming into his possession by distribution, and the matters of consideration and motive for any transfer of the property are of no importance.

Appellee asserts a right to recover the Florida Street property (Item 6, supra) or an interest therein to the extent of 7000/8500, for the reasons that: (1) the property was paid for with money distributed to Singer under the will, or (2) the property was purchased by Singer for the price of $8,500, of which sum $7,000 was a distribution to him.

We have already said that Singer had the right, during his lifetime, to dispose of property distributed to him under the will. Appellee's right to recover distributed property is limited by the terms of the will to "* * * that portion of my estate which has been distributed to them and of which they shall die seized and possessed." We find nothing in the will that expresses or indicates that the testator intended the remaindermen should receive or recover any property purchased with money distributed. It is therefore our opinion that appellee may recover only such property as had been distributed to Singer, was in his possession and undisposed of at the time of his death. (Also, the undistributed property to which Singer was entitled when his right thereto matures.) McMurray v. Stanley, 69 Tex. 227, 6 S.W. 412; Edds v. Mitchell, 143 Tex. 307, 184 S.W.2d 823, 158 A.L.R. 470 (Com.App.); McClure v. Bailey, Tex.Civ. App., 209 S.W.2d 671. Er.Ref.N.R.E.

Appellant complains there was no evidence from which the jury could find that Singer made delivery of the deed to the Drawbridge Property (Item 5, supra), and that the trial court erred in rendering judgment for appellee therefor. We think the points must be sustained.

Appellee says in his brief: "The evidence is silent regarding the intention of Robert C. Singer in the execution and handling of the 'drawbridge property' deed

that morning of July 14, 1948, other than as related by the testimony of the appellant, Mrs. Singer, and Mr. Bill Prewett, and Mr. F. L. Collier, and Mr. Singer's intent may be ascertained only by considering their testimony as to what took place that morning as viewed in the light of all the other facts in evidence and the circumstances that may legitimately be deduced therefrom."

The intention of Singer must be determined from the facts and circumstances preceding, attending and following the execution of the deed. Brown v. Brown, 61 Tex. 56. Preceding the execution of the deed, the facts and circumstances are: Singer was ill; was about to enter the hospital; was engaged in transactions relative to disposition of his property, or portions thereof, and called his attorney who prepared the deed in accordance with his instructions. The attending facts and circumstances are those above related, and those following are: after the execution of the deed its delivery to the attorney and his failure to file it for record until after Singer's death.

After the deed was executed, acknowledged and witnessed, there was no one in the room with Singer except appellant and Mr. Prewett, and theirs is the only direct testimony relative to its delivery.

Appellee alleged that at the time of the execution of the deed, Singer was ill, and that he placed the deed in the hands of his attorney, so that if he survived such illness the same should be returned and destroyed. The burden then was on appellee to offer some evidence in support of this allegation, and even though all of the testimony as to the facts relating to the transaction came from interested witnesses and presented only issues of fact for the jury, " * * * yet that rule cannot be extended so as to convert such testimony into positive testimony directly contrary thereto." Hall Music Co. v. Robinson, Tex.Civ.App., 7 S.W.2d 625, 626. The deed, on its face, was regular and sufficient to pass the title to the property described. The grantor was legally authorized to make the conveyance, and the facts and circumstances were such that its recording reasonably required, or justified, that it be attended to by some person other than the grantor or grantee. The fact that it was entrusted to Singer's attorney, we think, is not inconsistent with intention to deliver on his part. Sloan v. Sloan's Adm'r, Tex.Civ.App., 117 S.W.2d 803. If the testimony of appellant and Mr. Prewett as to what was said and done by Singer, and Mr. Prewett's explanation of why the deed was not recorded until after Singer's death are disregarded, we are unaided except by an inference drawn from the circumstance of delay. The deed, if delivered, passed title though it was not recorded. 14 Tex.Jur., p. 582, sec. 106.

We think appellee failed to discharge the burden resting on him to introduce evidence of the nondelivery of the deed, or that it was delivered to Mr. Prewett on condition, and that the evidence is so weak that it no more than raises a mere surmise or suspicion that the deed was not delivered, or that it was delivered on condition, for which reasons it falls short of being any evidence of such alleged facts. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059; 17 Tex.Jur., p. 909, sec. 410.

We think the evidence, which we have already set out, was sufficient to support the jury's finding that Singer endorsed and delivered to appellant the two checks (one for $16,500 and one for $5,082.73), with the intent of parting with control, during his lifetime, of the money evidenced thereby.

Without again setting out the testimony as it relates to appellee's allegations of the mental incapacity of Singer, and the exercise of undue influence over him by appellant at the time of the transactions here under inquiry, we do not think it sufficient to present jury issues. Long v. Long, 133 Tex. 96, 125 S.W.2d 1034.

As to the Bezdek note (Item 4), an examination of the record discloses only the circumstances above related, and the direct testimony that this note was delivered to appellant by Singer. Singer being authorized to dispose of this note during his lifetime, the same having been distributed to him by the executors of the

will, a parol gift of the same to appellant was a sufficient conveyance. Warren v. Schawe, Tex.Civ.App., 163 S.W.2d 415. Er.Ref.; 23 Tex.Jur., p. 160, sec. 130. We think that the circumstances are so weak as to fall short of being any evidence that Singer did not make a gift of the Bezdek note to appellant. Authorities, supra.

The record shows that during Singer's lifetime there was distributed to him under the will $59,159.64. The pass book introduced in evidence shows deposits made in the First State Bank of Corpus Christi from August 13, 1946, to July 8, 1948, amounting to $34,889.21. At the time of Singer's death there was $5,429.67 in this account. During the month of April 1948, Singer received under the will and deposited in this account $9,860.78, and from April 15, 1948, to the date of his death he drew from this account $6,746.65.

The jury found that the balance on deposit in the First State Bank of Corpus Christi ($5,429.67) represented distributions to Singer under the will. While the source of all sums of money deposited in this account is not identified by appellee or appellant, we think that, by giving credit to all the facts and circumstances in evidence favorable to the jury's finding and indulging all legitimate conclusions that might have been drawn from such facts and circumstances, the jury's finding is supported by the evidence.

If said bank balance represented money distributed to Singer under the will, then he died possessed thereof and the judgment awarding the same to appellee was correct. The delivery of the pass book to appellant by Singer did not constitute a gift of said bank balance. 9 C.J.S., Banks and Banking, § 271, p. 552.

Appellant complains that the will of William Singer is void because it violates the rule against perpetuities.

In Singer v. Singer, supra, the court held that the beneficiaries under the will could not force a distribution of the assets of the estate during the ten-year period following the death of the testator, if such distribution was opposed by the judgment of the executors. By paragraph five, supra, the testator provided that upon the expiration of ten years from his death a final partition and distribution of the estate should be had. We think that, when all the provisions of the will are construed together, the intention of the testator is clear that he commanded the executors to use "good business judgment" in making distribution of the estate and to distribute the same at such time as they might select within ten years from his death with a final division and distribution to be made of the part remaining in their hands upon the expiration of ten years.

We think the broadest interpretation to which paragraph (e), supra, is susceptible is that the testator then provided that if any of his six children should die within twenty-one years after his death, leaving no child or children or descendants surviving, then that portion of the estate distributed to such child and of which such child died seized and possessed would pass to the other of the testator's children, or to their descendants. If, however, the children of the testator are living at the expiration of twenty-one years after the testator's death, then their title to such property becomes absolute. The mention in that paragraph of undistributed property must be interpreted to have relation to the property undistributed within the ten-year period specified in the will. Otherwise a conflict in the provisions of the will would result.

The generally accepted definition of a perpetuity is: " * * * a limitation which takes the subject-matter of the perpetuity out of commerce for a period of time greater than a life or lives in being, and 21 years thereafter, plus the ordinary period of gestation." Rust v. Rust, Tex. Civ.App., 211 S.W.2d 262, 266, affirmed 147 Tex. 181, 214 S.W.2d 462.

Under the will the property, in any event, vested unconditionally twenty-one years after the death of the testator, and no possible perpetuity was created. Rust v. Rust, supra. Further, if the language of the testator " * * * is not free from doubt or ambiguity, then canons of construction may be resorted to, and that in-

terpretation should be adopted which will uphold and not destroy the will." Neely v. Brogden, Tex.Com.App., 239 S.W. 192, 193; Rust v. Rust, supra.

The judgment of the trial court is reversed in so far as it awarded recovery of the Drawbridge Property, rents thereon, and the Bezdek note (Items 4 and 5) to appellee, and judgment is here rendered that appellant recover each of these two properties, together with the rents on the Drawbridge Property collected since Singer's death. In other respects the judgment of the trial court is affirmed.

Reversed and rendered in part and in part affirmed.