ROBERT C. SINGER, JR., v. MARIAM C. SINGER.

No. A-2780. Decided February 28, 1951.
Rehearing overruled April 11, 1951.
(237 S. W., 2d Series, 600.)

116

*Keys & Holt, Birge Holt* and *I. M. Singer,* all of Corpus Christi, for petitioner, Robert C. Singer, Jr.

The Court of Civil Appeals erred in reversing the judgment of the trial court awarding the "drawbridge" property to plaintiff and rendering judgment that said property go to defendant, by holding that there was no evidence from which the jury could find that Robert Singer, Sr., did not make delivery of the deed to said property to his wife. Said court also erred in reversing the trial court's judgment as to one of the notes, for the same reason. Nye v. Bradford, 144 Texas 618, 169 A.L.R. 1, 193, S.W. 2d 165; Hanna v. Ladewig, 73 Texas 37, 11 S.W. 138; Edds v. Mitchell, 143 Texas 307, 184 S.W. 2d 823, 157 A.L.R. 470.

*Kemp, Lewright, Dyer & Sorrell, Allen Wood* and *Bill Prewett,* all of Corpus Christi, *Louis P. Pink,* of Los Angeles,

Calif., *Archer & Archer* and *L. Hamilton Lowe,* of Austin, for petitioner, Mariam C. Singer.

The Court of Civil Appeals erred in holding that the trust provisions of the will of William Singer, deceased, do not violate the rule against perpetuities of the Texas Constitution, Art. 1, sec. 26; it also erred in awarding to plaintiff Robert Singer, Jr., the bank balance of his father, as money which had been distributed to him from the estate of William Singer, deceased. Brooker v. Brooker, 130 Texas 27, 106 S.W. 2d 247; Munger v. Munger, 298 S.W. 470, writ refused; Logan v. Logan, 138 Texas 40, 156 S.W. 2d 507.

MR. JUSTICE SMITH delivered the opinion of the Court.

This suit was brought by Robert Singer, Jr., hereafter referred to as petitioner, against Mariam Singer and others, hereafter referred to as respondent, for the recovery of real and personal property distributed to Robert Singer, Sr., during his lifetime by the executors of the estate of William Singer, who survived his wife and died in 1944, leaving surviving him Robert Singer, Sr., and five other children. Robert Singer, Sr., died on July 26, 1948, and left surviving him petitioner, his only son, and respondent, his second wife.

The property involved in this appeal consists of: (1) a check for the sum of $16,500; (2) a check for the sum of $5,082.71; (3) $5,429.67 on deposit with the First State Bank of Corpus Christi; (4) a promissory vendor's lien note for $5,300, executed by Willie Bezdek in favor of William Singer Estate and assigned to Robert Singer, Sr., referred to as the Bezdek note; (5) Lots 8 and 9, Block 105, Beach Portion, City of Corpus Christi and referred to as the Drawbridge Property; (6) Lot 23, Block 5, Arcadia Subdivision, City of Corpus Christi and referred to as the Florida Street Property.

On July 14, 1948, Robert Singer, Sr., was directed by his doctors to enter a hospital in Corpus Christi. Before going to the hospital, and while at his home, Singer had his attorney, Bill Prewett, called to the home. The attorney was instructed to draw a deed conveying the Drawbridge property to respondent, which deed was prepared, was duly executed by Singer and was delivered into the custody of the attorney. Singer died at about 7 or 8 o'clock a.m. on July 26, 1948, and the deed was filed for record at 9:35 a.m. on the same day. The only persons present in the room with the grantor at the time the deed was executed were Prewett, Mr. Dowling, the notary who took the acknowl-

edgement and who witnessed the deed, and Mr. Collier who was called in to witness it.

The deed was read over to Singer, who then took it, made corrections of an initial at four places in the deed, then stated it was what he wanted and signed and acknowledged it. After the deed was acknowledged and witnessed the notary and Mr. Collier left the room.

Mr. Prewett testified that after the deed was executed respondent was called into the room and that Singer handed the deed to her and said, "Mama, here is a deed. This is to the Drawbridge. I want you to have this." Prewett further testified, "I think then perhaps she asked the question as to what this is all about. He said, 'You go on and let Bill file the record, have this recorded,' and then he turned to me and said, 'Bill, have this recorded and put the stamps on it.'" Prewett further said respondent had the deed at the time and that these instructions were never revoked. Respondent said she handed the deed "to Mr. Prewett as I was instructed to do." The deed was carried by Prewett to his office and there kept until it was filed for record.

Before going to the hospital Singer also endorsed and delivered to respondent items (1) and (2), supra, and instructed Mr. Prewett to assist respondent in cashing them. With these checks and another small check respondent opened an account with the Corpus Christi Bank and Trust Company from which account she drew, on July 16th, $20,000 and delivered the same to Mr. Prewett who kept it until after Singer's death, when he delivered the same to respondent, less a fee of $5,000 to himself.

Prewett further testified that Singer also took a bundle of papers from a metal box, handed them to respondent and said, "I want you to keep this. This bears six per cent. It will be an income for you." This bundle of papers included the Bezdek note and a deposit book of the account of Singer with the First State Bank of Corpus Christi. At the time this account was $5,429.67. At least two checks distributed under the will, one for $6,955.18 and one for $2,905.60, had been deposited in this account. Other checks of Singer had also been deposited and the account, from time to time, had varied in amount by reason of deposits and withdrawals.

Singer died testate and by codicil to his will bequeathed to petitioner ". . . the sum of ten thousand ($10,000.00) if, at

the time of my death, I have received my full portion or share of the estate of William Singer, otherwise he is to receive One Dollar only."

Items 1, 2, 4 and 5, supra, were admittedly distributions under the will of William Singer; the other items will be discussed as they are reached in this opinion.

The trial court entered judgment awarding Items 1, 2 and 6 to respondent, and Items 3, 4 and 5 to petitioner. Both parties appealed and the Court of Civil Appeals reversed and rendered judgment of the trial court as to Items 4 and 5, affirming the trial court in all other respects. (230 S.W. 2d 242). Respondent has thus been awarded Items 1, 2, 4, 5 and 6, while petitioner has been awarded Item 3 only.

Both parties are here by writ of error.

The determination of the proper disposition of these various items necessitates a construction of the will of William Singer, which in part provides:

"In the event that my wife, Lizzie Singer, should not survive me, then it is my will and desire, and I direct as follows: First, that all the property, real, personal and mixed, that I may die seized and possessed of shall pass to and vest in my above named Executors, in trust, for the benefit of my children or their substitutes, hereinafter set out, subject to the terms and conditions, towit:

"(a) As my estate consists largely of real estate which at the present time is bringing in good returns, as well as increasing in value, it is my desire that my Executors shall keep said estate together for ten years after my death, so that same shall not be unduly sacrificed by a hasty partition or sale thereof.

"(b) It is my desire, and I so direct, that my Executors or Trustees, or their successors, shall keep said property belonging to my estate, while under their control and management insured against fire and other hazards, pay taxes on same, collect the rents and income therefrom, sell, exchange, or otherwise dispose of all or any part thereof, invest or reinvest funds derived therefrom, pay their own fees and the expenses of management of said estate as hereinafter provided for, and to do all things proper and necessary, whether herein specifically enumerated or not, which a majority of my Executors may deem is to the best interests of the estate as a whole.

"(c) It is my desire, and I so direct, that my Executors shall not be compelled to partition and distribute my estate, except as hereinafter provided, until after ten years from the date of my death. It is my desire and intention that the income or cash on hand of my estate not necessary to defray current expenses, including repairs, taxes, insurance or other expense, shall be used to provide a more or less regular monthly sum for the support of each of my said six children or their respective substitutes, and I expressly authorize my Executors to make such monthly payments of approximately Seventy-five ($75.00) Dollars each, for each of said six shares for the purpose of carrying out the intention expressed in this paragraph. Said Executors, however, shall never be compelled to make any final or partial distribution of my estate, within less than ten (10) years after my death, other than as they may see fit, except said monthly payments out of the net profits from the conduct of the business of my said estate.

"(d) In making such monthly payments and making all partial and final divisions and distributions of my estate, as herein provided for, it is my will and desire, and I so direct, that same be divided into six equal shares or portions, and one share or portion be paid or conveyed to each of my following named six children, or their respective substitutes as herein provided, to-wit: * * *

"(4) One share to my son, Robert C. Singer.

*    *    *

"(e) In the event any one or more of my above named children should die leaving no child or children or descendants thereof surviving them, then that portion of my estate which has not been distributed but which would go to such child or children if they were alive, and that portion of my estate which has been distributed to them and of which they may, within twenty-one (21) years from the date of my death, die siezed and possessed, shall revert to the other of my six named children, share and share alike, or to the descendants of my other children as may be dead leaving descendants. In the event any one or more of my above named children should die leaving a child or children or descendants thereof surviving them, then that portion of my estate which has not been distributed but which would go to such child or children if they were alive, and that portion of my estate which has been distributed to them and of which they may die seized and possessed shall pass to and vest in their respective natural child or children, share and share alike. By the term 'child or children or the descendants thereof' of my

above named children as used herein, is meant natural children and not adopted children, and I hereby recognize as my natural grandson, Robert Singer, son of my son Robert C. Singer.

\*    \*    \*

"Fifth: Upon the expiration of ten (10) years from my death there shall be a final division and distribution of my estate in the portions above set out, allowing for gifts, whether made in money, property or loans, as above provided. Such division and distribution shall be made within such time as the Executors shall deem to be within good business judgment. If any of my children or their substitute should desire to receive property, in lieu of cash, for their share or any part thereof, they may do so by taking such property at a price to be agreed upon, in writing, by all of my children, or their respective substitutes, and when such agreement as to price has been reached then such property shall immediately be conveyed to the one willing to accept it and the amount of the agreed price thereof shall be charged against the proper share. If no agreement can be reached, then the person desiring to receive such property may accept same at the same price as the best price that could be obtained at a cash sale, within the judgment of the Executors. Property not acceptable as cash shall be sold and the proceeds divided.

"Sixth: No child of mine, nor their substitute, shall have any right to sell, transfer, convey, or encumber any of the property or any part of the property or estate disposed of under the terms of this will until after the actual receipt of such property by such child or substitute. All such payments of money or property which are made by the Executors of this will to my child or children or their substitutes shall be made to them personally, or in the case of minors, to their guardian, and no part of any such income, money or property shall ever be transferred or assigned by any of them nor be subject to any judicial process against any of them at any time before the same has been paid over to the beneficiary as herein provided. No part of my estate of property disposed of under the terms of this will shall be seized, attached or in any manner taken by any judicial proceedings or court process against any of my children or their substitutes until the actual receipt of such property or estate by such children or substitutes."

Respondent contends that under the proper construction of this will the executors could refuse to partition and distribute the res of the estate, if they deemed such action within their "good business judgment," for a period greater than that al-

lowed by the rule against perpetuities in violation of Section 26, Article 1 of the Constitution of Texas. This contention is without merit.

This same will has already been construed in Singer v. Singer, 196 S.W. 2d 938, error refused N.R.E. In that case it was stated that "the testator, undoubtedly, had confidence in the business judgment of the executors, as evidenced by the broad grants of power to them, and provided that their judgment should be controlling *during the 10-year period following his death.*" (Italics ours). It necessarily follows from the above construction that the executors could not refuse to partition and distribute the property in the estate for a period greater than 10 years.

■ A perpetuity is defined in this state as follows: "A perpetuity has been defined as a limitation which takes the subject matter of the perpetuity out of commerce for a period of time greater than a life or lives in being, and 21 years thereafter, plus the ordinary period of gestation." Rust v. Rust, 211 S.W. 2d 262, Id. 147 Texas 181, 214 S.W. 2d 462; Neely v. Brogden, Texas Com. App. 239 S.W. 192, 193. It is easily apparent that the will in no way violates Section 26, Article 1 of the Constitution.

Furthermore, the will in this case is very similar, in certain respects, to the will construed in Rust v. Rust, supra, in which it was held that upon the death of the testator, the beneficial title to the estate vested in the cestui que trust, and if the beneficial title vests, "it is immaterial that full possession and enjoyment of the property is postponed beyond the period of a life or lives in being and 21 years thereafter with the ordinary period of gestation added." Anderson v. Menefee, 174 S.W. 907, error refused. Under the authority of the Rust case, the beneficial title to an undivided 1/6th interest in the estate of William Singer vested in Robert Singer, Sr., upon the death of the former, and the rule against perpetuities does not apply.

■ Petitioner contends that the will of William Singer bequeathed to Robert Singer, Sr., a life estate only in the property he received under such will, with remainder over to petitioner. With this contention we cannot agree. In paragraph "Sixth" under IV, the will says: "No child of mine, nor their substitute, shall have any right to sell, transfer, convey or encumber any of the property or any part of the property or estate disposed of under the terms of this will *until after the actual receipt of such property by such child or substitute.*" (Italics ours). Had the

paragraph not contained this last qualification, petitioner's contention would be sound, but by the addition of this qualification it is clear that the testator intended that his children could "sell, transfer, convey or encumber" such property as was actually distributed to them under the terms of the will. Robert Singer, Sr., had a conditional or defeasible fee in the property here involved. The condition being that if he should die "seized and possessed" of any of such property, then such property would vest in petitioner. Harrell v. Hickman, 147 Texas 396, 215 S.W. 2d 876.

■ Petitioner next argues that even if Robert Singer, Sr., did have a conditional fee in such property, he did not have the power to give such property away and thus defeat the rights of the remainderman. However, the will gave him the power to "transfer" the property involved. This is "an act by which the property of one person is by him invested in another." C. M. Pearre Co. v. Hawkins, 62 Texas 434, and includes the power to "give." Kell v. Cumby, 125 W. Va. 802, 26 S.E. 2d 233, and see Halsted v. Globe Indemnity Co., 258 N.Y. 176, 179 N.E. 376, 377; Kramer v. Spradlin, 148 Ga. 805, 98 S.E. 487, 488.

Petitioner does not otherwise contend that the courts below erred in awarding to respondent Items 1 and 2.

As to Item 3, the record reflects that on April 15, 1948, Robert Singer, Sr., had $1,631.54 on deposit in the First State Bank of Corpus Christi. At that time he deposited in the account two checks, admittedly distributed to him from the William Singer estate, one for $6,955.18 and one for $2,905.60. From April 15, 1948, until July 8, 1948 (the date of the last deposit in the account) only $684.00 of additional deposits were made. It is admitted that the evidence does not disclose the source of the $1,631.54 balance on April 15, 1948, nor the $684.00 deposited after that time.

The jury found that $5,429.67, the full amount of the account at the time of Robert Singer, Sr.'s death, represented distributions to Singer from the estate of William Singer, and that respondent was not made a gift of the account. The Court of Civil Appeals held that such jury findings were sufficiently supported by the evidence. Respondent does not here argue that she was given this account, but she does argue that there is no evidence in the record to support the finding that all of the $5,429.67 balance represented a distribution from William Singer's estate.

■ The burden was upon petitioner to prove what portion of the account constituted funds distributed from the estate. Logan v. Logan, 138 Texas 40, 156 S.W. 2d 507. He has not shown whether the amounts drawn from the account, between April 15, 1948, and the time of Singer's death, were from the two checks deposited between those dates or from the $1,631.54 balance on April 15, 1948, or from the $684.00 later deposited; and since there is no evidence to show the source of the $1,631.54 nor the $684.00, the finding that these sums represented distributions from the estate was based on mere speculation or surmise on the part of the jury. The finding of the jury and the judgment of the courts below is supported by the evidence in the sum of $3,114.13 only.

Concerning Items 4 and 5, the jury found in answer to Special Issues Nos. 1 and 11, that Robert Singer, Sr., did not make a delivery of the deed to the Drawbridge property, nor make a gift of the Bezdek note to respondent, Mariam Singer. The Court of Civil Appeals held that there was no evidence to support such findings and reversed and rendered that portion of the trial court's judgment awarding such property and note to petitioner.

■ It appears from the record that Singer did not endorse this note nor execute a written assignment thereof by separate instrument. While this would not prevent a gift of the note, Warren v. Schawe, Tex. Civ. App., 163 S.W. 2d 415, error refused; Brown v. Fore, Tex. Com. App., 12 S.W. 2d 114, 63 A.L.R. 435, it is, however, a fact to be considered by the jury in determining whether or not a gift was in fact intended. Atchley v. Rimmer, 148 Tenn. 303, 255 S.W. 366; Jones v. Jones, 102 Ky. 450, 43 S.W. 412.

Concerning the Drawbridge property, respondent and her attorney, Mr. Prewett, who is also a party defendant, (they being the only living persons then present) testified that after Singer executed the deed he handed it to respondent intending thereby to make a present gift to her. Petitioner, however, plead and argued that Singer did not give the deed to respondent, but that he delivered it to Prewett with instructions to record and deliver the deed to respondent if he (Singer) died; but if he recovered, to return him the deed or destroy it.

■ The record shows that the deed in question was filed for record within a few hours of Singer's death. Prewett tries to explain this by saying that from the time Singer entered the

hospital until his death, that he (Prewett) was so occupied aiding respondent at home and at the hospital, that he did not have time to record the deed. However, petitioner was able to establish that Prewett did find time to refile the deed from the estate of William Singer to Robert Singer, Sr., during such time. (The reason for such refiling is not apparent). This was sufficient evidence to raise a jury question as to whether or not Singer made a gift of the property to respondent.

■ There being some evidence in the record to support the jury's findings to Special Issues Nos. 1 and 11, the Court of Civil Appeals was without authority to reverse and render that portion of the trial court's judgment. Childre v. Casstevens, 148 Texas 297, 224 S.W. 2d 461; Eastham v. Hunter, 98 Texas 560, 86 S.W. 323; Choate v. San Antonio and A.P. Ry. Co., 90 Texas 82, 36 S.W. 247, 37 S.W. 319.

■ Petitioner's only claim to Item 6 is that it was purchased partly with funds distributed to Robert Singer, Sr., from the estate of William Singer. As has already been determined, the will of William Singer gave Robert Singer, Sr., the power to dispose of the property distributed to him under the terms of the will in any fashion that he might see fit. There is nothing in the will to indicate that the testator intended that the remainder-man should receive or recover any property purchased with any money so distributed.

As to Items 1, 2 and 6 the judgment of the trial court and the Court of Civil Appeals is affirmed.

As to Item 3 the judgment of the trial court and the Court of Civil Appeals is affirmed in the amount of $3,114.13 and reversed and rendered as to the remaining $2,315.54.

As to Items 4 and 5 the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed, there having been no proper assignment of insufficiency before the Court of Civil Appeals. Liberty Film Lines v. Porter, 136 Texas 49, 146 S.W. 2d 982; Ochoa v. Winerich Motor Sales Co., 127 Texas 542, 94 S.W. 2d 416.

Opinion delivered February 28, 1951.

MR. JUSTICE WILSON, joined by Justices Smedley and Calvert, dissenting.

I respectfully dissent from the decision of the majority with respect to Item No. 5 known as the drawbridge property.

Petitioner Robert Singer, Jr., has a jury finding that Robert Singer, Sr., did not make delivery of the deed to the drawbridge property to Mrs. Mariam C. Singer, the wife of Singer, Sr., and stepmother of Singer, Jr. The sole question discussed here is whether there is any evidence to support this verdict.

On July 14, 1948, Robert C. Singer, Sr., was ill at home and had been told by his physician that he would have to be taken to the hospital and might die. He put his business affairs in order. He sent for his lawyer, Mr. Bill Prewett, and, among other things, he instructed him to prepare the deed in question. He gave his attorney a deed into him from his father's estate so that the attorney might copy the description. The attorney went to his office, prepared the deed, and returned that same morning to the Singer home. He went to the bedroom where Robert Singer, Sr., lay and in the presence of a Mr. Dowling, a notary public, delivered the deed. Singer, Sr., took the deed, read it, and himself corrected an initial. After that a Mr. Collier entered the bedroom and signed the deed as a witness. Mr. Collier testified to Singer, Sr.'s conversation as follows:

"Q. What did he say about this paper, whether he said it to Prewett in your hearing or said it to you or to the other gentleman?

"A. He said, 'I have signed the paper and I have changed the name, changed right - -'; there was a wrong name in it somewhere, 'and you know what I want you to do.'

"Q. Well, what else did he say?

"A. Well, that was about all as regards the paper, and then our conversation led off on the building."

Mr. Dowling and Mr. Collier left. All of the above is uncontroverted.

Mrs. Singer and Mr. Prewett testified substantially as follows:

"After Mr. Dowling and Mr. Collier left the Singer home, Mr. Singer requested Mr. Prewett to call Mrs. Singer into his bedroom, and, when she came into this room, Mr. Singer handed her the deed from himself to her and said 'Mama, this is yours, I want you to have it.' Mrs. Singer, having the deed in her hand, asked Mr. Singer 'What is this?' to which Mr. Singer replied 'It is a deed to the "drawbridge property." I am giving you the "drawbridge property" ' Mr. Singer then turned to Mr. Prewett and said to the latter, 'Bill, I want you to put the stamps on this deed and record it. Whatever the stamps cost, send me a bill

and I will pay it,' to which Mr. Prewett replied, 'I will.' Mrs. Singer then handed this deed to Mr. Prewett, 'as my husband requested me to' and Mr. Prewett took it with him when he left the Singer home."

Mr. Singer died the morning of July 26, 1948, and Mr. Prewett filed the deed for record that same morning a short while later.

Petitioner, Singer, Jr., relies upon the following evidence to sustain his verdict:

1. The fact that Mr. Prewett retained the deed in his possession 12 days from July 14 until July 26, and then filed it for record at 9:35 A. M. about an hour and a half or more after the death.

2. The testimony of F. L. Collier that Singer, Sr., in referring to the deed told Mr. Prewett "You know what I want you to do."

3. The lack of a natural relationship between father and son. The son was 21 years old when he first met his father in 1937 and had very little communication thereafter.

4. The fact that Mariam Singer was familiar with the William Singer will.

5. The fact that the $20,000.00 in currency that Mrs. Singer had withdrawn from the bank and given over into the possession of Mr. Prewett was, immediately after the death of Robert C. Singer, turned over by Mr. Prewett to Mrs. Singer minus a fee for himself of $5,000.00.

Thus the uncontroverted facts established that Robert Singer, Sr., signed and acknowledged a deed of gift to his wife. No attack is made on his mental capacity or upon his signature or upon the acts of the notary in taking and affixing the acknowledgment. At the time he executed this deed Robert Singer, Sr., had the full right and power to give this property to his wife. He took this property under his father's (William Singer's) will which made him an executor or trustee of that will. He, with the other executors, had managed his father's estate through a great deal of controversy, some of which reached the appellate court in Singer v. Singer, 196 S.W. 2d 938. By reason of this, and by reason of his holding title under his father's will, it can be presumed, as a matter of law, that Robert

Singer, Sr., knew that if he wanted to give this property to his wife he must do so during his lifetime, because, by the terms of the William Singer will, title automatically divested from him upon death so that his wife could not take by inheritance.

And the uncontroverted evidence established that he did want to give it to her. Even under his son's (petitioner) theory of this case—that Singer, Sr., handed the deed to Mr. Prewett with instructions to hold it until his (Singer, Sr.'s) death and then record it—even under this theory, Singer, Sr., wanted to give the property to his wife but did not want the gift to become final until his certain death.

The fact that Prewett held the deed until immediately after the death before filing does not of itself raise a jury issue. The act of filing is not necessary to a valid delivery of the deed, and the fact that Singer, Sr., entrusted the filing of the deed to his attorney is not inconsistant with a delivery in view of Singer's illness. As Prewett was attorney for both Mr. and Mrs. Singer, the fact that he had physical possession of the deed is no evidence either for or against the delivery of the deed. The possession of the husband is the possession of the wife. If there were direct evidence that Mr. Singer, Sr., had said to Mr. Prewett "Do not deliver this deed to my wife unless I die," then the time of filing might tend to corroborate it; but there is no direct evidence at all.

The testimony of the witness, F. L. Collier, that Singer, Sr., said to Prewett "you know what I want you to do" does not add anything. The lack of a close relationship between father and son strengthens the evidence that Singer, Sr., wanted to give this property to his wife, and that he took the only legal method to accomplish his intent.

Both sides admit that Singer, Sr., wanted to give this property to his wife and did not want it to go by inheritance to his son. He knew that he could accomplish this only by a deed executed and delivered before death. The effect of the majority ruling is to defeat this purpose upon suspicion raised principally by the five thousand dollar fee to Mr. Prewett.

Petitioner has title only if his father died "seized and possessed" of the drawbridge property. He must attack this deed, and clearly he had the burden of raising the issue of non-delivery with competent evidence before submitting non-delivery to a jury. This he has failed to do.

In my opinion, the Court of Civil Appeals has correctly decided this point and should be affirmed on this point. See their opinion at 230 S.W. 2d 242 for citation of authority.

Opinion delivered February 28, 1951.

Rehearing overruled April 11, 1951.